Deborah J. Cahill ("the wife") appeals from a judgment divorcing her from Patrick D. Cahill ("the husband"). In entering that judgment, the court, among other things, declined to make an award of three zygotes formed via in vitro fertilization of ova taken from her with sperm taken from the husband and frozen at the Medical School of the University of Michigan ("the University"). We affirm.
The record reveals the following pertinent facts.[1]
The parties were married *Page 466 
in 1993. During their marriage, while living in Michigan, the parties had difficulties conceiving and bearing children, prompting them to seek in vitro fertilization services from the University. After the husband and wife had entered into a contractual relationship with the University, doctors at the University "harvested" a number of ova from the wife's body, and six ova were subsequently fertilized with the husband's sperm so as to become zygotes. Three of these six zygotes were implanted inside the wife's uterus, while the remaining three zygotes were kept by the University and were frozen and placed in the University's storage facilities located in Ann Arbor, Michigan. The wife subsequently gave birth, on November 11, 1995, to triplets, of which one male child currently survives, albeit with what the wife terms "extreme" ongoing medical problems.
The parties separated in 1996; the wife moved to Florida; the husband moved to Mobile, Alabama. The wife filed a divorce action in Michigan that was later dismissed on her motion over the objection of the husband.
The husband, after the dismissal of the wife's divorce action in Michigan, filed pro se a divorce complaint in the Mobile County Circuit Court. The wife filed an answer and a counterclaim seeking alimony, medical expenses, attorney fees, and an order requiring the husband to furnish her with an automobile. Approximately one week before the trial date of August 6, 1998, the wife filed an amended counterclaim seeking, among other things, an award of the frozen zygotes located at the University. The husband filed an answer to the amended counterclaim, contending that the zygotes were outside the trial court's jurisdiction; that they were not property; that there were "legal precedents" prohibiting an award of the zygotes to the wife; and that decision of the matter should be reserved for a subsequent hearing.
During the course of the trial, the parties presented evidence indicating that because the parties had executed various documents before beginning the in vitro fertilization procedure, neither the husband nor the wife could unilaterally obtain the zygotes from the University. After the trial was concluded, the trial court ordered both parties "to produce a copy of the contract that was signed with the University['s] lab regarding the zygotes for the Court's review . . . on or before August 11, 1998."
On August 11, 1998, the husband filed a "Notice of Compliance" in which he stated that he was "unable to obtain a signed copy of the agreement executed by the parties as it is in the [wife's] medical record, which is protected by medical confidentiality laws"; however, he attached as "Exhibit A" a fax cover page dated August 10, 1998, showing seven pages, from the Department of Obstetrics and Gynecology, University of Michigan. Included in the seven fax pages was the "CONTRACT CONCERNING CONTROL AND DISPOSITION OF ZYGOTES" blank agreement form used by the University. The husband stated that the form contract was the same agreement that had been signed by the parties. This contract form contained the following pertinent language:
 "[The wife] and [the husband] agree that all control and direction of our [zygotes] will be relinquished to the Physicians of the Department of Obstetrics and Gynecology under the following circumstances:
"1. A dissolution of our marriage by court order.
". . . .
"4. At any time by our/my election.
 "5. If we/I have not remained in contact with the IVF Program for a period of time exceeding three(3) years."
The wife failed to produce a copy of the agreements that she and the husband had *Page 467 
signed with the University, and she failed to dispute the terms of the agreement form produced by the husband.
On August 17, 1998, the trial court issued an order directing the wife to sign a release form within seven days so as to cause the University to release to the trial court "any agreements dealing with the Michigan Medical Center Lab and the parties and the zygotes." The trial court's order also noted that "the Michigan lab may have an interest in the zygotes by virtue of [the] contract form produced by the [husband]." The trial court also issued an order determining all of the other issues in the case, but reserving the issue of the zygotes "pending further information being provided to the Court."
The wife failed to sign a release form per the trial court's order; consequently, the trial court was unable to obtain a copy of the contract. The husband filed a motion for an order finding the wife to be in contempt of court. This motion was docketed for a hearing on November 10, 1998. However, the wife again failed to sign a release form or to produce a copy of the contract executed by the parties with the University. For whatever reason, the trial court did not hold the wife in contempt of court.
On November 12, 1998, the trial court entered the following judgment:
 "This cause coming on to be heard on November 10, 1998 on pending motions filed by the [husband] pro se, and [he] appearing pro se, and [the wife] not appearing but having her counsel present, and from the sworn testimony and demeanor of the [husband] and arguments
of [the wife's] counsel; and upon consideration, it is ORDERED, ADJUDGED and DECREED by the Court as follows:
". . . .
 "2. With respect to the zygotes, based on the evidence presented and the failure of evidence presented, the Court does rule that the zygotes shall not be the property of either party. According to the only evidence presented, the University of Michigan appears to be the current owner of the zygotes. (Emphasis added.)
 "3. The costs having been pre-paid, no costs are due."
The wife filed a postjudgment motion, alleging that the zygotes were "assets of the marriage" and requesting that the trial court award the zygotes to her. The trial court denied that motion, consequently not making any disposition of the zygotes.
The sole issue the wife's attorney presents for review by this court on appeal is "[w]hether the trial court erred in awarding the fertilized eggs of the Defendant-mother to the University of Michigan."[2]
This statement of the issue totally misrepresents the trial court's judgment. The trial court did not make an award of the zygotes; it gave as its reason that based on the failure of evidence and the only evidence presented, the University, a nonparty, "appears" to be the owner of the zygotes.
In response to the trial court's direction to "produce a copy" of the parties' contract, the husband tendered, in lieu of the unobtainable original agreement, a form agreement used by the University before it undertakes the in vitro fertilization procedure. The wife did not rebut the husband's contention that these documents constituted the parties' agreement, despite an express direction from the trial court that she take steps to cause the University to produce the signed agreement and the trial court's stated concern that the contract gave the University an interest in the zygotes. *Page 468 
Under the ore tenus standard of review, "`a presumption of correctness accompanies the trial court's judgment when it has made findings of fact based on disputed oral testimony without a jury,'" and we will not reverse its judgment "`unless it is shown to be plainly and palpably wrong, considering all of the evidence and all inferences that can be logically drawn from the evidence.'" Concerned Citizens of Fairfield v. City of Fairfield,718 So.2d 1140, 1141 (Ala.Civ.App. 1998) (quoting AlabamaHighway Dep't v. Stuckey's/DQ of Grand Bay, Inc., 613 So.2d 333,335 (Ala. 1993)). For particular property to be subject to being awarded to either party in a divorce proceeding, it must be demonstrated that the property is, in fact, property of the marriage. See Cox v. Cox, 531 So.2d 1232 (Ala.Civ.App. 1988).
The trial court's judgment made no determination as to the zygotes, in effect leaving that issue to be litigated between the parties and the University of Michigan. That judgment is due to be, and is hereby, affirmed.
We deny the husband's request that we inform certain third-party charities of an alleged "fraud that has been committed against them." We also deny the husband's request that this court "sanction" counsel for the wife.
AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] While both parties have included matter in their briefs that does not appear in the record, this court, like the Alabama Supreme Court, "is bound by the record, and it cannot consider a statement or evidence in a party's brief that was not before the trial court." Ex parte American Resources Ins. Co.,663 So.2d 932, 936 (Ala. 1995).
[2] The husband contends that the trial court erred in not finding counsel for the wife to be in contempt for allegedly refusing to follow its orders. Because the husband failed to cross-appeal, we do not reach this issue. See Gainous v. Tibbets,672 So.2d 800, 804 (Ala.Civ.App. 1995).