Linda Hill, Belinda G. Heglar, and Howard L. Rogers were employed as teachers at Talladega College, a private institution, under employment contracts with a term of one year, extending from August 1984 to August 1985. In May 1985, they received letters terminating their employment with the college. The letter to Hill is typical of these letters:
"Dear Dr. Hill:
 "By now you have been apprised of a number of changes taking place at the College. As a result, I have been instructed to inform you that your services at the College shall no longer be required. It is with deep regret and sincere appreciation of your contributions that this step is taken. Please be advised that such action is consistent with *Page 737 
policies established by the Board of Trustees.
 "Attached, you will find procedures for your clearance, if you have not already completed the process.
 "Sincerely, "s/Joseph E. Thompson "Joseph E. Thompson "Academic Dean"
Shortly after receiving these letters, the teachers filed separate suits against the college and its president, Paul B. Mohr, Sr., alleging a breach of their employment contracts and wrongful termination. The court granted summary judgment for the defendants in each case, and the plaintiffs appealed. We have consolidated these three cases for the purpose of writing one opinion. We affirm the judgment of the trial court in each of these cases.
The primary issues raised by the plaintiffs on this appeal all concern the effect to be given the Procedural Standards inFaculty Dismissal Proceedings promulgated by the American Association of University Professors (AAUP). These standards establish relatively elaborate procedural safeguards that must be followed before a professor can be fired. These procedures are to be followed "[w]hen reason arises to question the fitness of a college or university faculty member who has tenure or whose term appointment has not expired. . . ."
The plaintiffs argue that these standards were incorporated within their employment contracts and that the college's failure to follow these procedures gives rise to a claim for breach of contract and wrongful termination. In essence, the plaintiffs assert that the standards apply to their cases because the standards, by their terms, apply to any non-tenured teacher "whose term appointment has not expired." In view of the fact that the receipt of their termination letters preceded their contracts' August expiration dates, the plaintiffs insist that a genuine issue of material fact was established in support of their cases, precluding the trial court's grant of summary judgment in favor of the defendants.
The AAUP standards are neither expressly a part of, nor referenced in, the plaintiffs' written contracts of employment. However, the plaintiffs argue that references to these standards in a faculty handbook and other college documents operate to incorporate the AAUP guidelines within their formal contracts of employment. We need not consider here, however, the plaintiffs' many arguments in support of this theory. Like the trial court, we feel that these standards are inapplicable to the facts of this case, even if the standards were incorporated within the contracts at issue. Assuming, therefore, but not deciding, that the AAUP standards are a part of the plaintiffs' contracts, we will proceed with our analysis of this case.
Initially, we note that our review of a trial court's ruling on a motion for summary judgment is limited to the same factors that were considered by the trial court in making its decision.Lowe v. East End Memorial Hospital Health Centers,477 So.2d 339 (Ala. 1985). Our reasoning, however, is not limited to that applied by the trial court. "[T]he judgment of the trial court will be upheld if the court's holding is correct, despite the fact that our reasons are different from those stated by the trial court." Id. at 341. Accordingly, we will turn to the materials that were before the trial court when it ruled on the motions and to the precedent and rules of law that we hold applicable to this case.
It is well established that "[s]ummary judgment is appropriate in a breach of contract action where the contract is unambiguous and the facts undisputed." P S Business, Inc.v. South Central Bell Telephone Co., 466 So.2d 928, 931-32
(Ala. 1985).
 "The decision whether a contract provision is or is not ambiguous is a question of law for the trial court. Mass. Appraisal Services, Inc. v. Carmichael, 404 So.2d 666 (Ala. 1981). . . . [I]t is well settled that the words of a contract are to be given their ordinary meaning, and *Page 738 
the intention of the parties is to be derived from the provisions of the contract itself. Sisco v. Empiregas, Inc. of Belle Mina, 286 Ala. 72, 237 So.2d 463 (1970). If the court finds as a matter of law that a contract is unambiguous, then the construction and legal effect of that contract are a determination that may be appropriately made by summary judgment. Bible Baptist Church v. Stone, 55 Ala. App. 411, 316 So.2d 340 (1975)."
Food Service Distributors, Inc. v. Barber, 429 So.2d 1025, 1028
(Ala. 1983); P S Business, Inc., 466 So.2d at 932.
We hold that the contracts in these cases, including the AAUP standards "incorporated" therein for the purposes of this decision, are unambiguous as a matter of law. Specifically, it is clear from the title of the standards and the language contained in their provisions that the standards apply only todismissals of college or university faculty members. Moreover, we think it self-evident that the ordinary meaning of the word "dismissal" forecloses the application of these standards to this case, as the following discussion will show.
By definition, tenured faculty are entitled to continuing employment, and a "dismissal" obviously takes place whenever tenured teachers are fired. On the other hand, the nature of a term contract is far different. Such a contract will by definition lapse at the completion of the time for performance, and the teacher serving under such a contract generally has no legally enforceable entitlement to continued employment beyond the contract's stated term. See Board of Regents of StateColleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548
(1972). Assuming that all obligations under such a contract are performed, the parties cannot be said to have been "dismissed" when their respective performances have been completed. The contract simply matures and dies, and the parties are then free to do as they please. The only time a party may properly be said to have been "dismissed" under a term contract is when that contract is cancelled before its stated termination date. Only in that situation are the contractual expectations of the parties disturbed.
Therefore, we think it clear in both logic and law that the AAUP dismissal standards apply to term contracts only when the "dismissal" represents an attempt to cancel an established, ongoing contractual relationship. We think that is the plain meaning of the statement that the standards will apply to a faculty member "whose term appointment has not expired." If the obligations under the term appointment are fulfilled, then the standards are not implicated. Each party has gotten what he bargained for, and neither has "dismissed" the other.
There is no genuine issue of material fact as to whether the plaintiffs were "dismissed" in this case. They were not. While the plaintiffs refer repeatedly in their brief to their May "terminations" and treat these letters as though they cancelled the existing contracts, the evidence presented to the trial court is to the contrary. The affidavits of Paul B. Mohr, the president of the college, unequivocally state that each of the plaintiffs was paid in full for his or her services under the contracts, and Mohr further characterizes each of these letters as a "notice of non-renewal." In short, it appears from Mohr's affidavits that the effect of the letters was to inform the plaintiffs that they would not be re-hired for the next academic year, and not that the plaintiffs were "dismissed" from the existing contracts. Additional documents and affidavits characterizing the college's actions as giving notice of non-renewal also appear in the record. Moreover, none of the plaintiffs' answering affidavits denies or contradicts either Mohr's statements or this other evidence in this regard.
In summary, we find that the AAUP standards are unambiguous as a matter of law; that they apply only to "dismissals," as that word is commonly applied; and that no such "dismissal" occurred in this case. Rather than being "dismissed," the plaintiffs were instead given notice of non-renewal *Page 739 
of their term contracts. Therefore, there appears to be no genuine issue of material fact regarding this issue, and the plaintiffs could not recover on their complaint as a matter of law. The "contracts" the plaintiffs so vigorously champion have not been breached on the instant facts.
We also note that the facts of this case are strikingly similar to those in Gowens v. Cherokee County Bd. of Educ.,348 So.2d 441 (Ala. 1977). Gowens involved a high school coach who was also employed under a non-tenured term appointment. After he was given notice of non-renewal, he attempted to invoke the provisions of local regulations setting forth procedures to be followed in the event of dismissal proceedings. There we held:
 "It is not necessary here for this court to consider what effect this local regulation has on this proceeding. Mr. Gowens was not dismissed from his employment as a teacher but rather he was simply not reemployed for the next year. The terms of the [existing] contract were fullfilled by both parties to the contract and there is no indication in this record of a breach of the employment contract by dismissal of Mr. Gowens."
Id. at 442 (emphasis added). Based on Gowens and the analysis set forth above, we find no error in the trial court's decision on this issue.
Plaintiff Rogers also contends on this appeal that he is a tenured faculty member. Thus, he claims he is entitled to the AAUP dismissal procedures on this ground as well as those advanced above. Rogers claims that, although he was not the recipient of "formal" tenure, he had achieved "de facto" tenured status, largely as a result of his being employed for 10 years at the college and his reliance on an additional group of AAUP standards.
The faculty handbook noted earlier also states that the college's tenure policies would conform with a provision of thePrinciples of Academic Freedom and Tenure of the AAUP. This provision, as reproduced in the faculty handbook, provides that
 "[b]eginning with appointment to the rank of full-time instructor or a higher rank, the probationary period should not exceed seven years, including within this period full-time service in all institutions of higher education; but subject to the proviso that when, after a term of probationary service of more than three years in one or more institutions, a teacher is called to another institution it may be agreed in writing that his new appointment is for a probationary period of not more than four years, even though thereby the person's total probationary period in the academic profession is extended beyond the normal maximum of seven years."
Rogers argues that this provision was also incorporated within his contract. Therefore, he asserts that his employment for over ten years establishes a genuine issue of material fact — whether he had de facto tenure — and he argues that the trial court erred in granting summary judgment on this issue. We disagree.
We note initially that the AAUP standard at issue here is not absolute on its face. It does not unequivocally state that tenure shall be granted after seven years of employment; rather, it states that tenure should be granted after seven years, and it later refers to seven years as the "normal" maximum probationary period. Therefore, we are not convinced that this statement alone would create an expectation that tenure would be granted after seven years of service.
Moreover, unlike that portion of the faculty handbook which arguably incorporates intact the AAUP dismissal standards, that portion of the handbook noting the tenure provision promulgated by the AAUP contains additional and unambiguous limiting language. Two caveats appear on the same page with the cited reference:
 1) "Permanent tenure is extended only to persons who are specifically elected by the Board [of Trustees]. . . ." *Page 740 
 2) "It should be understood that the acquisition of tenure or of promotion at Talladega College is not automatic after seven years of teaching. . . ."
As noted previously, summary judgment is proper where the contract is unambiguous and the facts are not in dispute. Assuming, without deciding, that this additional AAUP standard was also incorporated into the plaintiff's contract, we hold that the proposed contract unambiguously provides that such tenure could be granted only by specific action on the part of the Board of Trustees, and that the "seven year" provision is, by its terms, a non-mandatory provision, especially as limited by the subsequent caveat. Thus, no "de facto" tenure as such could arise under the terms of this "contract."[1] The trial court was therefore correct in granting summary judgment against Rogers, there being no evidence before it of any specific action with respect to Rogers's tenured status on the part of the Board of Trustees.[2]
We think the above discussion resolves the issues relating to the plaintiffs' contract claims. Of necessity, it also disposes of their claims for wrongful termination. If there was no breach of the underlying contracts, then no "terminations" occurred, and, thus, no causes of action for "wrongful termination" arose. The trial court, therefore, was not in error in granting summary judgment on these claims.
Likewise, the plaintiffs' argument that President Mohr acted in his individual capacity, and not as an agent of the college, is also foreclosed by the above analysis. If no cause of action arose on the facts set forth in the court below, then Mohr's personal liability is not an issue. The trial court, therefore, did not err in granting summary judgment in favor of Mohr.
We have carefully considered the other arguments and issues advanced by the plaintiffs, and we find that they are either without merit or are resolved by the discussion set forth above.
For the foregoing reasons, we affirm the three judgments of the trial court.
AFFIRMED.
MADDOX, JONES, SHORES and STEAGALL, JJ., concur.
[1] We think the facts of this case are distinguishable from those of Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694,33 L.Ed.2d 570 (1972). In Perry, the plaintiff had taught for ten years in the Texas state college system before his dismissal. He subsequently sued, alleging that he had achieved tenure under a de facto tenure program fostered by the last college at which he taught. In particular, he relied on college documents stating that, while there was no formal tenure system at his college, it was the college's intent to confer "permanent tenure as long as his teaching services [were] satisfactory."Id. at 600, 92 S.Ct. at 2699. He also relied on a tenure statement of his state university system which appears to adopt in large part the AAUP tenure standard noted above. Significantly, however, the tenure statement relied on in Perry
provided that "the probationary period for a faculty membershall not exceed seven years." Id. at 600 n. 6,92 S.Ct. at 2699 n. 6 (emphasis added). The United States Supreme Court held that the plaintiff had sufficiently alleged the existence of de facto tenure and hence a legally cognizable property interest to foreclose cognizable property interest to foreclose summary judgment denying his procedural due process claim.
In the instant case, we think the non-mandatory nature of the AAUP standard at issue, the existence of a formal tenure system, and the unambiguous limiting language in the "incorporated" college documents render inapposite the application of Perry to these facts.
[2] Rogers does allege that the Board of Trustees adopted or followed unspecified "AAUP guidelines" in 1977. We note, however, that Rogers's affidavit discloses no specific Board action with regard to his status. Moreover, we believe that his affidavit in regard to the Board's action does not conform with the Rule 56(e), A.R.Civ.P., requirement that specific facts be alleged which show that there exists a genuine issue for tiral. Thus, the trial court could not be put into error for failing to give weight to this aspect of Rogers's affidavit. *Page 741