This case involves the loss of jobs for two employees of Technology Plus of Alabama, an agency under the auspices of the State Board of Education.
The record reflects the following. In November 1986, the State Board of Education passed a resolution creating the Alabama Center for Quality and Productivity (ACQP). According to the resolution, the center was designed "to provide industry with training and education in applied high technology (applied equipment) and applied high techniques (advanced strategies and methods), act as a catalyst for economic development, and promote education's focus on quality and productivity in the industrial sector," in an effort to help Alabama industry compete in the world market. The center was to be financially self-sufficient through the collection of client fees; otherwise, it would cease to exist. ACQP was established at Calhoun State Community College, and the resolution stated that ACQP's staff members would be employees of Calhoun State with all rights and benefits.
In an affidavit that was admitted as an exhibit, Dr. Fred Gainous, chancellor of the State Department of Postsecondary Education, said that he had no "meaningful control" over ACQP and that the center "was a political creation operated principally for political purposes." The public and media expressed growing criticism over the center, and in April 1992, Gainous said, "it became politically obvious that the board would be obliged to address the existence and role of ACQP." Gainous also said there was a "need to formally and publicly put an end to the *Page 802 
erroneous view frequently voiced that some connection existed between ACQP and the operation of Calhoun."
The concerns expressed by Gainous resulted in the board's adoption of another resolution in April 1992 that essentially replaced ACQP with Technology Plus of Alabama. That resolution stated in pertinent part:
 "2. All staff of the Alabama Center for Quality and Productivity who are currently employees of Calhoun Community College shall be employed by the Alabama Center for Quality and Productivity with credit for current years of experience and retain all employee benefits and shall be allowed to transfer all accrued annual and sick leave and shall have the rights and benefits of similarly-situated employees of a two-year college. The funding for the Director of the Center, and the current Director of the Center, shall be transferred to the Alabama Department of Postsecondary Education, through the State Board of Education, without loss of rights or benefits. . . .
". . . .
 "All staff shall have all rights and benefits of similarly-situated employees of a two-year college, and salaries shall conform to state salary schedules established by the State Board of Education."
At the April 1992 board meeting in which the resolution was adopted, Gainous told board chairman John Tyson that the purpose of the resolution "is to void [ACQP's] attachment [to Calhoun State Community College] and to have the center be a part of the Department of Postsecondary Education." Gainous also told Tyson that it could "be perceived" that carrying out the resolution could affect personnel.
At the meeting, board members, including Bettye Fine Collins, who represented ACQP's district, had the following discussion regarding the resolution.
 "COLLINS: As I read the resolution, there are no personnel changes. In fact, it speaks to that, so I don't know how your 30-day rule pertains.
"TYSON: That's why I'm asking.
 "COLLINS: There are no changes in employment, employees at the center at all. It is simply taking it out from under Calhoun Community College and placing it under Dr. Gainous's department and a name change as requested by the director, because apparently there is some changing as to the functions of the center.
 "TYSON: Top of page two. All staff of the center . . . (muttering).
 "COLLINS: That states it very clearly. I don't see why the 30-day rule would apply, but I am not going to vote to overrule you again if you rule it does.
". . . .
 "TYSON: Well, unless somebody can tell me why I shouldn't rule that way, I am persuaded by Ms. Collins's comments that it just doesn't affect any employees. Everybody that's there has the same rights and benefits that they have had all along. Is that right?
"COLLINS: Exactly right.
". . . .
 "TYSON: . . . I guess you are in favor of this, is that right, Bettye?
 "COLLINS: Well, yes, sir, because actually this center and Calhoun have had sort of a paper connection as far as the contracts being signed by the president — but not actually an attachment as to a department of that college. Dr. Gainous has worked very closely with the director in this. This is just merely realigning the center and removing it — as it has been viewed since its inception as a function of Calhoun Community College. It really is not. This simply restates it, and says that it does come under Dr. Gainous and the Postsecondary Department. It is not anymore attached to Calhoun, and the name change apparently comes because — I'll let the director speak to the name change, but I'm just telling you that I'm certainly supportive of it, and feel that the college is not connected to it, and so it's fine."
According to the record, at no time during this conversation did Gainous tell the board that he disagreed with Collins's statements regarding the effect the resolution would have on personnel, if, in fact, he did disagree. *Page 803 
Finally, on January 13, 1994, the board passed a resolution abolishing Technology Plus. In the resolution, the board said that Technology Plus had "reached the position that it [could] no longer provide its expected services to business and industry." Technology Plus was closed as of January 13, 1994, but the resolution provided that its employees would be paid through January 31, 1994. In letters dated January 24, 1994, Gainous wrote Technology Plus employees, informing them that their jobs had been terminated effective February 1, 1994. The board also transferred Technology Plus's assets to the Department of Postsecondary Education. The chancellor was to present the board with a report of the disposal of the assets at the board's February meeting.
Appellees Elise Johnston and Gene Tibbets had been hired to work at ACQP and were transferred to Technology Plus pursuant to the board's resolution. Each worked under an annual contract; Johnston was an office manager, and Tibbets was an aviation specialist. After they received notice that their employment was terminated, they requested hearings on the matter. Gainous denied the requests. Then in April 1994, Johnston and Tibbets filed a lawsuit seeking an affirmative injunction requiring Gainous, in his capacity as chancellor, to reinstate them in their former jobs with back pay and benefits. They also sought compensatory and punitive damages.
After a hearing in the case, the trial court found that the employees were covered by the Fair Dismissal Act (FDA), §36-26-100 et seq., Ala. Code 1975. The court also found that the employees could not add their time with ACQP to their time with Technology Plus, and were therefore probationary employees. Therefore, the court said, they were not entitled to a due process hearing under § 36-26-102. As probationary employees under the FDA, however, the trial court said, Johnston and Tibbets could be removed only after receiving written notification at least 15 days prior to the effective date of termination. The trial court found that the employees had not received 15 days' notification, and, therefore, could not be terminated until their contracts expired. The trial court ordered Gainous, as chancellor, to pay the former employees back pay and benefits from February 1, 1994, until September 30, 1994, when their employment contracts expired. The employees were to be paid from Technology Plus's assets. Gainous appeals.
Gainous first contends that the employees of Technology Plus were not covered by the Fair Dismissal Act. The FDA sets out dismissal procedures for nonteacher and nonclassified employees in certain school systems and institutions. The definition of "employees" includes "all persons employed by . . . two-year educational institutions under the control and auspices of the state board of education." § 36-26-100, Ala. Code 1975. To be covered by the Act, employees also must be full-time employees not otherwise covered by the state merit system, teacher tenure law, or other state statute. Id.
The purpose of the FDA "is to provide non-teacher employees a fair and swift resolution of proposed employment terminations," and the FDA should be liberally construed to effectuate its purpose. Bolton v. Board of School Commissionersof Mobile County, 514 So.2d 820, 824 (Ala. 1987). Nothing in the record indicates that Johnston and Tibbets were covered by the merit system, teacher tenure law, or any other state law. The resolution creating ACQP stated that ACQP's staff members would be employees of Calhoun State Community College, with all rights and benefits. The resolution creating Technology Plus asserted that Technology Plus employees and staff would have the same rights and benefits of similarly situated employees of two-year colleges. The State Board of Education passed both resolutions. The employees' salaries, according to the resolution, would conform to the salaries set by the State Board of Education. Clearly, Technology Plus was under the auspices of the State Board of Education. Despite Gainous's argument to the contrary, the resolution provisions regarding the employees and staff of ACQP and Technology Plus would lead one to reasonably believe that the board intended for those employees to have the same rights and benefits of employees of *Page 804 
two-year colleges. The Technology Plus employees meet the criteria established by the state Legislature for employees to be entitled to redress under the FDA. We hold, therefore, that the trial court correctly found that Johnston and Tibbets were covered by the FDA.
Gainous then argues that even if Technology Plus employees are covered by the FDA, he, as chancellor, was not the employing authority under the Act for the purpose of giving any probationary employee notice of termination pursuant to §36-26-101. The trial court found, however, that by virtue of the Board of Education's resolutions, Technology Plus employees came under Gainous's direct supervision. We agree.
The director of Technology Plus was under the direct supervision of Gainous. Gainous, in his capacity as chancellor, wrote the letters informing Technology Plus employees that their jobs had been terminated. Perhaps most importantly, in its resolution abolishing Technology Plus, the State Board of Education transferred all the assets of Technology Plus to the Department of Postsecondary Education, and the chancellor was to give the board a report of the disposal of the assets. Therefore, the trial court properly ordered that Gainous, in his official capacity as chancellor of postsecondary education, pay the appropriate amounts awarded in this case from the assets of Technology Plus.
Gainous also maintains that under § 36-26-101, Ala. Code 1975, if notice of termination is given to a probationary employee less than 15 days prior to the effective termination date specified in the notice, the probationary employee is entitled only to be paid for 15 days after notice is given. Therefore, Gainous says, the trial court erred in holding that, because the employees did not receive 15 days' notice prior to their termination, the terminations were ineffective, and that the employees were to be paid for the duration of their contracts, i.e., until September 30, 1994.
The trial court found that Johnston and Tibbets were probationary employees. Johnston and Tibbets did not file a cross-appeal challenging the trial court's findings that they were probationary employees; therefore, we cannot consider their arguments in their brief to this court that they are nonprobationary employees. In the absence of taking an appeal, an appellee may not cross-assign as error any rulings of the trial court adverse to the appellee. McMillan, Ltd. v. WarriorDrilling Engineering Co., 512 So.2d 14, 24 (Ala. 1986); Exparte Army Aviation Center Federal Credit Union, 477 So.2d 379
(Ala. 1985); Johnson v. Haynie, 414 So.2d 946 (Ala. 1982).
We have found no Alabama cases on point regarding how long a probationary employee is entitled to receive pay after being notified that his or her job has been terminated. However, holdings in cases from jurisdictions that have considered the issue support Gainous's argument. In Miracle v. Gable,452 S.W.2d 399 (Ky. 1970), the Kentucky Court of Appeals interpreted the rule regarding termination of probationary employees under the Kentucky Merit System. That rule provided, in pertinent part, "The appointing authority shall notify the employee in writing at least 10 working days prior to the effective date of separation of the reasons for the separation." Miracle, a probationary employee of the Kentucky Parks Commission, was given notice of termination five days before the end of her probation period. She was paid for the 10 days following her notice of termination, and the Kentucky court held that "[t]hat is all to which she was entitled." See also, Amodio v. CivilService Commission, 81 N.J. Super. 22, 194 A.2d 512 (1963).
Alabama's statute concerning termination of probationary employees states that "[a]t any time during the employee's probationary period, the employing authority may remove an employee by furnishing said employee written notification at least 15 days prior to the effective day of termination." §36-26-101(c), Ala. Code 1975. After the Board of Education passed the resolution abolishing Technology Plus, Gainous wrote letters to Technology Plus employees informing them of the board's action and telling them that they would be paid through January 31, 1994. The letter was dated January 24, 1994.
In its order, the trial court held that the notice of termination received by Johnston *Page 805 
and Tibbets was not effective notice under the FDA; therefore, the court said, they remained Technology Plus employees until their contracts ended or until they "received the notice of termination required by the law applicable to the plaintiffs." The trial court relied on Woodham v. Alabama Aviation Technical College, 537 So.2d 934 (Ala.Civ.App. 1988), in reaching its conclusions. Woodham, however, dealt with anonprobationary employee whose termination notice had to meet certain requirements in order to be effective. Here, the trial court found that Johnston and Tibbets were probationary employees; therefore, written notification of termination 15 days prior to termination is all that is required. §36-26-101(c), Ala. Code 1975.
We hold that the trial court erred in awarding Johnston and Tibbets pay for the duration of their contracts. Gainous's letter dated January 24, 1994, served as the written notification required to terminate probationary employees. Therefore, Johnston and Tibbets are entitled to be paid only for 15 days from January 24, 1994. Because they already have been paid for seven of those days, Johnston and Tibbets are entitled to pay for only eight additional days.
Gainous also contends that the trial court erred in holding that Johnston and Tibbets were deprived of a property right, i.e., the balance of their contracts, without due process. As probationary employees under the FDA, Johnston and Tibbets could be terminated at the will of the employing authority with 15 days' written notice. § 36-26-101. Therefore, they had no valid expectation of employment during their probationary periods. Blanton v. Griel Memorial Psychiatric Hospital,758 F.2d 1540, 1544 (11th Cir. 1985). Probationary employees do not possess property rights in their employment and are, therefore, not entitled to due process rights to safeguard their jobs.Id.; see also McElwee v. Todd, 581 F.2d 1182 (5th Cir. 1978). We hold, therefore, that the trial court erred in holding that Johnston and Tibbets had been deprived of a property right without due process.
For the above reasons, we hold that the trial court correctly found that Johnston and Tibbets were covered by the FDA and were entitled to seek a remedy from Gainous in his official capacity as chancellor of postsecondary education, and we therefore affirm those parts of the trial court's judgment dealing with those issues. We further hold, however, that the trial court erred in determining that Johnston and Tibbets were entitled to be paid for the duration of their contracts. Therefore, we reverse the judgment of the trial court as to the amount of money to be awarded in this case and remand this cause to the trial court with instructions to enter an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
ROBERTSON, P.J., and CRAWLEY, J., concur.
THIGPEN, and YATES, JJ., concur in result.