841 So.2d 245 (2002)
Dr. Linda YOUNG, in her official capacity as president of George C. Wallace State Community College; and George C. Wallace State Community College
v.
John McLEOD.
2990440.
Court of Civil Appeals of Alabama.
January 5, 2001.
*246 Edward M. George and Jeffery A. Foshee of Foshee & George, L.L.C., Montgomery; and R. Rainer Cotter III of Cassady, Fuller & Marsh, Enterprise, for appellants.
Gregory B. Stein of Stein & Brewster, Mobile; and Thomas K. Brantley of Parkman, Brantley, LaMere & Atwell, Dothan, for appellee.
CRAWLEY, Judge.
George C. Wallace State Community College ("the college") and Dr. Linda Young, in her official capacity as its president, appeal from a judgment of the circuit court holding that John McLeod, a speech *247 and theater instructor at the college, is entitled to backpay and benefits as a full-time tenured teacher.
This is the second time the parties have been before this court. In McLeod v. Beaty, 718 So.2d 673 (Ala.Civ.App.1996), reversed, Ex parte McLeod, 718 So.2d 682 (Ala. 1997), McLeod argued that he was entitled to tenure under the Fair Dismissal Act, § 36-26-100 et seq., Ala.Code 1975 ("the FDA").[1] A majority of this court rejected that argument, holding that the FDA does not apply to instructors at the state's junior colleges. Instead, we held, instructors at the state's two-year educational institutions are governed by (and earn tenure according to the regulations promulgated pursuant to) the Alabama Trade School and Junior College Authority Act, see § 16-60-80 et seq., Ala.Code 1975, ("the ATSJCAA").
McLeod petitioned the Alabama Supreme Court for certiorari review, arguing that this court had erred in holding that the FDA does not apply to him. The supreme court granted review and reversed the judgment of this court. Ex parte McLeod, supra, 718 So.2d 682. Justice Butts authored the main opinion for the supreme court, stating that "instructors... at two-year colleges fall within coverage of the [Fair Dismissal] Act." 718 So.2d at 687. Only one member of the court, Justice Shores, concurred with the statement that the FDA applies to junior-college instructors.
Justice Almon concurred specially, with an opinion joined by Justice Maddox. He stated, "I would hold that the Fair Dismissal Act does not apply to junior college and trade school faculty members." 718 So.2d at 689 (Almon, J., concurring specially) (emphasis added). Justice Almon expressed the opinion that § 16-60-111.4(5), a part of the ATSJCAA, governed the achievement of tenure for instructors at two-year institutions. He also noted that the State Board of Education had, pursuant to the legislative authority granted in § 16-60-111.4(5), promulgated tenure regulations for junior-college instructors. Id. Those regulations are found in the "Policies, Procedures, and Regulations Governing Alabama State Community, Junior, and Technical Colleges/Institutes, 1979," specifically § 617(3)(A) of the "Revised Hearing Procedure" ("the RHP").
Justice Almon's special concurrence pointed out that the RHP "tracks the language of § 36-26-101(a), part of the Fair Dismissal Act," by providing that, before an instructor at a state junior college can gain tenure, he must be employed on a probationary status for a period not to exceed three years. 718 So.2d at 689. Justice Almon observed that the chancellor of the Postsecondary Education Department had interpreted the RHP to require that, in order to be eligible for tenure, a junior-college instructor must have three consecutive years of probationary service, whereas the Alabama Supreme Court, construing a virtually identical provision of the FDA, had held that the three years of probationary service need not be consecutive or continuous. See Ex parte Clayton, 552 So.2d 152, 154-55 (Ala. 1989).
Justice Almon thought that, because the wording of the RHP was virtually identical to a corresponding provision in the FDA, the two provisions should be interpreted to state the same tenure requirement, namely, *248 that the three years' probationary service required for tenure need not be consecutive or continuous. Concluding that the chancellor's interpretation of the RHP was contrary to the supreme court's interpretation ofand the legislative intent behindthe FDA, Justice Almon voted to reverse the judgment. He stated that, on remand, the RHP should be applied "in a manner consistent with [the supreme] court's holding in Clayton." 718 So.2d at 690.
Justice See concurred in the result, without writing. Chief Justice Hooper and Justice Kennedy dissented, also without writing. Justice Cook recused himself. Therefore, of the seven Justices who participated in the decision, only three, at the most (Justice Butts, Justice Shores, and possibly Justice See) believed that the FDA states the requirements for attaining tenure at the state's two-year educational institutions. At least two Justices (Justices Maddox and Almon) disagreed, stating that the ATSJCAA, rather than the FDA, controls the achievement of tenure. Two other Justices (Chief Justice Hooper and Justice Kennedy) dissented from the reversal without explaining the basis for their disagreement.
This court is bound by the decisions of the Alabama Supreme Court. See § 12-3-16, Ala.Code 1975. "[O]f course, the `decisions of the supreme court' referred to in said Code Section ... [are] the `decisions of the majority' of the Supreme Court." Willis v. Buchman, 30 Ala.App. 33, 40, 199 So. 886, 892, rev'd on other grounds, 240 Ala. 386, 199 So. 892 (1940) (emphasis in original). A statement in which only two members of the court concur is not, therefore, a "decision" of the Alabama Supreme Court by which we are bound. See also Rule 16(b), Ala. R.App. P. Because Ex parte McLeod, 718 So.2d 682, provides us with no clear holding as to the reach of the FDA, we deem it appropriate to reexamine the issue, particularly in light of earlier binding precedent from the Alabama Supreme Court and a recent decision by that court in Stephenson v. Lawrence County Bd. of Educ., 782 So.2d 192 (Ala. 2000).

McLeod's Claims Are Not Barred by Sovereign Immunity
Dr. Young and the college argue that McLeod's claims are barred by the sovereign immunity provided the State of Alabama by § 14 of the Constitution. This argument was previously presented to and addressed by this court in the initial appeal and by the supreme court on certiorari review. In Ex parte McLeod, Justice Butts stated the law as it pertains to § 14:
"In general, § 14 prohibits the State and its agencies from being made defendants in any court. Alabama State Docks v. Saxon, 631 So.2d 943 (Ala. 1994). This protection from suit also applies to officers or agents of the State who are sued in their official capacities or individually, when the action is, in effect, one against the State. Mitchell v. Davis, 598 So.2d 801 (Ala.1992); Phillips v. Thomas, 555 So.2d 81 (Ala.1989). However, the immunity from suit conferred by § 14 is not absolute. A state officer is not immune from suit when he or she has acted under a mistaken interpretation of the law, when the lawsuit is to compel the performance of a legal duty or ministerial act, or where the lawsuit is brought under the Declaratory Judgment Acts."
718 So.2d at 684. Justice Butts stated that the counts alleged in McLeod's complaint fell within the exceptions to the protection from suit provided by § 14 and that McLeod's complaint was not barred by the doctrine of sovereign immunity. Id. It appears that a majority of the supreme *249 court concurred with that statement. As previously noted, Justice Shores concurred in the main opinion authored by Justice Butts. Justice See concurred in the result. Whether a complaint is barred by the doctrine of sovereign immunity is generally a threshold issue to be resolved. See Gunter v. Beasley, 414 So.2d 41 (Ala. 1982). It can be assumed that because Justice See concurred in the result of the opinion he necessarily concurred in Justice Butts's conclusion that McLeod's complaint was not barred by the doctrine of sovereign immunity. Justice Almon and Justice Maddox concurred specially, stating that they disagreed with Justice Butts's conclusion that the FDA applies to instructors such as McLeod. Justice Almon and Justice Maddox did not state that they disagreed with Justice Butts's conclusion that McLeod's complaint was not barred by the doctrine of sovereign immunity; thus, it must be assumed that they agreed with that conclusion. Therefore, at least five Justices, a majority of the court, determined that McLeod's complaint was not barred by the doctrine of sovereign immunity; that determination became the law of the case.

What Employees Are Covered by the FDA?
Section 36-26-100, Ala.Code 1975, the "coverage" provision of the FDA, states:
"The term `employees,' as used in this article, is deemed to mean and include all persons employed by ... two-year educational institutions under the control and auspices of the state board of education ... who are so employed as bus drivers, lunchroom or cafeteria workers, maids and janitors, custodians, maintenance personnel, secretaries and clerical assistants, supervisors and all other persons not otherwise certified by the state board of education. Only full-time employees who are not otherwise covered by the state merit system, the teacher tenure law, or other state statute at the time this article is adopted are intended to be covered by this article. Full-time employees include (a) adult bus drivers and (b) other employees whose duties require 20 or more hours in each normal working week of the school term, employing board holidays excepted. Substitute teachers and substitute employees are excluded from the article."
(Emphasis added.) A majority of this court has previously held that the FDA does not apply to junior-college instructors. See McLeod v. Beaty, 718 So.2d 673 (Ala.Civ.App.1996). We reiterate that holding today, and we now restate and elaborate upon our reasons.
(1) The title of the FDA excludes teachers from coverage. The FDA states that it establishes "[d]ismissal procedures for non-teacher, non-classified, etc. employees in certain school systems, institutions, etc." (Emphasis added.) See McLeod v. Beaty, 718 So.2d at 678.
(2) Our supreme court has repeatedly stated that "the overall purpose of the `Fair Dismissal Act' ... is to provide non-teacher employees a fair and swift resolution of proposed employment terminations." See Bolton v. Board of School Comm'rs of Mobile County, 514 So.2d 820, 824 (Ala.1987) (emphasis added); Ex parte Holifield, 604 So.2d 420, 422 (Ala.1991); Ex parte Alabama Inst. for Deaf & Blind, 578 So.2d 1308, 1310 (Ala.1991).
This court, too, has frequently observed that the Act applies to "nonteacher" employees. See Gainous v. Tibbets, 672 So.2d 800, 803 (Ala.Civ.App.1995); Williams v. Ward, 667 So.2d 1375, 1377 (Ala.Civ.App.1994); Saulsberry v. Wilcox County Bd. of Educ., 641 So.2d 283, 285 *250 (Ala.Civ.App.1993); Hardy v. Birmingham Bd. of Educ., 601 So.2d 87, 92 (Ala. Civ.App.), rev'd on other grounds, Ex parte Birmingham Bd. of Educ., 601 So.2d 93 (Ala.1992).
(3) Three recognized canons of statutory construction suggest that junior-college instructors are not covered by the FDA. First, the rule of noscitur a sociis, dictating that "words grouped in a list should be given related meaning," see Stephenson v. Lawrence County Bd. of Educ., 782 So.2d 192, 197 (Ala.2000), indicates that the list of persons covered by the FDA ("bus drivers, lunchroom or cafeteria workers, maids and janitors, custodians, maintenance personnel, secretaries, ... clerical assistants, [and] supervisors") includes year-round support staff, but not instructional personnel. See Uwakolam v. Huntsville City Bd. of Educ., 554 So.2d 1036, 1038 (Ala.Civ. App.1989) (stating that "[t]he employees dealt with under [§ 36-26-100 et seq.] are nonteachers employed year round").
Second, the rule of ejusdem generis, dictating that general words following the enumeration of particular classes of persons are construed to apply only to persons in the same general class as those specifically enumerated, see Lambert v. Wilcox County Comm'n, 623 So.2d 727, 731 (Ala.1993); McLeod v. Beaty, 718 So.2d at 679, indicates that the "other persons" covered by the FDA are those whose jobs are of the same kind as the employees specifically enumerated, i.e., year-round support staff rather than instructional personnel.
Third, the rule that "a specific statute relating to a specific subject is regarded as an exception to, and will prevail over, a general statute relating to a broad subject," see Druid City Hosp. Bd. v. Epperson, 378 So.2d 696, 699 (Ala.1979), indicates that the FDA does not apply to instructors at the state's junior colleges, because those instructors are covered by another, more specific, statute. Cf. Stephenson v. Lawrence County Bd. of Educ., 782 So.2d at 195-96 (holding that statutes relating to the appointment and dismissal of a custodian of school funds for a county school system were specific and prevailed over a general statute allowing the county superintendent of schools to recommend the hiring and firing of "principals, teachers, and all other regular employees of the [school] board"); Murphy v. City of Mobile, 504 So.2d 243 (Ala.1987) (holding that a statute establishing a majority-vote requirement for the appointment of municipal judges by a seven-member city council was specific and took precedence over a general statute setting out a five-vote requirement for the transaction of city council business); Machen v. Scottsboro City Bd. of Educ., 537 So.2d 27 (Ala.Civ.App. 1988) (holding that a statute relating to "bus drivers" was specific and prevailed over a general statute relating to "all full-time support employees working a minimum of 20 hours per week"); Stough v. B & B Pallet Repair, Inc., 778 So.2d 193 (Ala.Civ.App.2000) (holding that a statute dealing with "minors employed contrary to law" was specific and governed over a general provision listing "minors" as a subcategory of "employees" under the workers' compensation law). Because the ATSJCAA contains a specific provision relating to the tenure requirements for junior-college instructors, it takes precedence over the FDA, a more general statute dealing with the procedures to be followed in dismissing "persons employed by ... two-year educational institutions."
(4) The ATSJCAA was enacted in 1982. Section 16-60-111.4 was adopted in 1982 as part of Act No. 82-486, Ala. Acts 1982, p. 805, § 6. The FDA was enacted in 1983. Section 36-26-100 was adopted in 1983 as part of Act No. 83-644, Ala. Acts 1983, p. *251 1004, § 1. Thus, by the time the FDA was passed, junior-college instructors were "otherwise covered by [another] state statute," and were, therefore, excluded from the reach of the FDA. See Williams v. Ward, 667 So.2d 1375, 1377 (Ala.Civ.App. 1994) (holding that a full-time, tenured teacher at a state junior college was not covered by the FDA but was "otherwise covered by" § 16-60-111.4(5)). Accord Shuford v. Alabama State Bd. of Educ., 978 F.Supp. 1008, 1024 (M.D.Ala.1997), affirmed, 152 F.3d 935 (11th Cir.1998) (stating that "[a]t the time the Alabama Fair Dismissal Act was adopted, junior college presidents were already covered by § 16-60-111.4").
The FDA does not govern the tenure requirements for junior-college instructors, because, in the words of § 36-26-100 (part of the FDA), those instructors are "otherwise covered ... by [another] state statute." In a series of unanimous decisions, our supreme court has indicated that whether instructors at the state's two-year educational institutions are tenured is determined by reference to the ATSJCAA, specifically § 16-60-111 and the regulations promulgated thereunder.
In Webster v. Byrd, 494 So.2d 31 (Ala. 1986), our supreme court recognized that tenure policies regarding instructors at the state's junior colleges are established by rules and regulations promulgated by the board of education. According to the court, the board of education derives its authority to make such rules and regulations from § 16-60-111. Webster v. Byrd was decided in 1986, three years after the enactment of the FDA; yet the court had no hesitation in concluding that the ATSJCAA, § 16-60-110 et seq., gave the state board of education the "authority to make rules and regulations to govern the hiring and firing of tenured instructors in our trade schools and junior colleges." 494 So.2d at 32. The court did not mention the FDA.
In Owen v. Rutledge, 475 So.2d 826 (Ala. 1985), the court held that the writ of mandamus can be used to enforce tenure rights "of teachers employed by junior, community, and technical colleges under the provisions of § 16-60-111 (now § 16-60-111.4) and rules and regulations duly adopted under the authority of that statute by the Alabama State Board of Education." 475 So.2d at 827 (emphasis added). The court did not mention the FDA.
In Hulcher v. Taunton, 388 So.2d 1203 (Ala.1980), the court held that a teacher at a state technical school earned tenure by virtue of the Alabama State Board of Education's "tenure policy for trade and technical schools." 388 So.2d at 1204. Even though the decision in Hulcher predated the enactment of both the ATSJCAA and the FDA, it is instructive because it illustrates our supreme court's recognition, as early as 1980, that the state's postsecondary institutions already had in place a tenure policy for instructors at two-year schools and colleges. See Hulcher v. Taunton, 388 So.2d at 1204-05 & n. 2 (noting that a teacher-tenure policy for postsecondary school instructors had existed since 1967). That policy gave teachers in postsecondary institutions the same "job security as others in public education." Id. The ATSJCAA merely codified the authority of the board of education, acting through the chancellor of the Postsecondary Education Department, to establish a tenure policy for postsecondary teachers. See § 16-60-111.4(5).
This court, too, has held that questions concerning the state's postsecondary teachers are governed by the ATSJCAA. In Klein v. State Bd. of Education, 547 So.2d 549 (Ala.Civ.App.1988), we stated:
"Pursuant to section 16-60-110(6), Code 1975, the postsecondary education department *252 has been delegated the responsibility of directing and supervising the state's junior colleges. Additionally, a chancellor has been established as the chief executive officer of the department. §§ 16-60-111.1 and -110.5, Code 1975. The chancellor has the authority to control, manage, and regulate the junior colleges and, concomitantly, to make those decisions necessary for the schools' proper management. §§ 16-60-111.2 and -111.6, Code 1975. Each junior college president makes the day-to-day decisions necessary for his school's operation and is responsible to the chancellor for those decisions. § 16-60-111.6, Code 1975."
547 So.2d at 551.
In Christeson v. Northwest Alabama State Junior College, 371 So.2d 426 (Ala. Civ.App.1979), this court unequivocally held that the right of tenure at a state junior college arises "from the provisions of § 16-60-111, [Ala.Code 1975;] and rules and regulations duly adopted under authority of said statute by the Alabama State Board of Education." 371 So.2d at 427.
Because junior-college instructors were covered by another state statute at the time the FDA was passed, it can be assumed that the Legislature, in defining the term "employees" in § 36-26-100, intended to exclude those instructors from the coverage of the FDA. Cf. Stephenson v. Lawrence County Bd. of Educ., supra, 782 So.2d at 199 (holding that, because the enactment of a statute relating to the removal of a custodian for school funds ("CSF") significantly predated the effective date of the FDA, and the position of CSF was clearly covered by a State statute at the time the FDA was passed, the Legislature intended to exclude CSF's from the coverage of the FDA).
To summarize, we conclude that the title of the FDA, the definition of who is included within its coverage, the settled construction of three courts that junior-college teachers are "otherwise covered" by some "other state statute," the legislative history of the FDA and the timing of its passage after the ATSJCAA, and relevant principles of statutory construction, all dictate the conclusion that the FDA does not apply to McLeod or to other instructors at the state's junior colleges.

What Employees Are Covered by the ATSJCCA?
Instructional personnel at the state's junior colleges and trade schools are covered by the ATSJCAA. Section 16-60-111.7, Ala.Code 1975, provides:
"The president of each junior college and trade school shall appoint the faculty and staff of each junior college and trade school according to qualifications prescribed by the board [of education] and such other regulations which may be adopted by the board in accordance with Section 16-60-111.4."
Section 16-60-111.4 makes it clear that the requirements for faculty tenure are determined pursuant to the ATSJCAA. That section provides:
"The State Board of Education, upon recommendation of the chancellor, shall be authorized to:
". . . .
"(5) Prescribe qualifications for faculty and establish a salary schedule and tenure requirements for faculty at each junior college and trade school."
(Emphasis added.) Section 16-60-111.5(2) states that the chancellor shall "interpret the rules and regulations of the board concerning the junior colleges and trade schools."

*253 McLeod's Employment History at the College

From March 1984 through November 1994, McLeod was employed as an adjunct instructor on a quarter-by-quarter, as-needed basis, for a total of 32 academic quarters. For 26 of those quarters, he was employed as a "part-time" faculty member and was paid on a local part-time salary schedule. For six quarters, he was employed as a "full-time temporary" faculty member and was paid on the State "D" salary schedule. For each period of employment, whether full-time or part-time, McLeod had an employment contract that specified a starting date and an ending date and that was subject to the following pertinent "Terms and Conditions":
"6. It is understood that only full-time [faculty] members with continuing service status have the expectancy of continued employment beyond the contract period. If continuing service status has not been achieved, then this contract shall not be construed as binding on either party beyond its specified dates, and there is no expectancy, expressed or implied, of continued employment beyond the contract period.
". . . .
"10. Part-time faculty are temporary. Part-time positions are non-tenured and part-time experience does not apply toward tenure.
"11. No guarantee of employment for part-time faculty is expressed or implied beyond the contract period."
The following chart sets out what the parties agree represents McLeod's employment history at the college:

Date of Employment Hours Taught Type of Contract
Spring quarter 1984 10 Part-time
Winter quarter 1985 5 Part-time
Fall quarter 1985 5 Part-time
Winter quarter 1986 5 Part-time
Spring quarter 1986 5 Part-time
Summer quarter 1986 5 Part-time
Fall quarter 1986 5 Part-time
Winter quarter 1987 10 Part-time
Spring quarter 1987 5 Part-time
Fall quarter 1987 5 Part-time
Winter quarter 1988 15 Part-time
Spring quarter 1988 10 Part-time
Summer quarter 1988 15 Part-time
Fall quarter 1988 10 Part-time
Winter quarter 1989 15 Part-time
Spring quarter 1989 15 Part-time
Fall quarter 1989 10 Part-time
inter quarter 1990 15 Part-time
Spring quarter 1990 10 Part-time
Fall quarter 1990 15 Part-time
Winter quarter 1991 20 Full-time temporary

*254
Spring quarter 1991 10 Part-time
Fall quarter 1991 15 Part-time
Winter quarter 1992 10 Part-time
Spring quarter 1992 25 Full-time temporary
Fall quarter 1992 15 Part-time
Winter quarter 1993 15 Part-time
Spring quarter 1993 25 Full-time temporary
Fall quarter 1993 25 Full-time temporary
Winter quarter 1994 25 Full-time temporary
Spring quarter 1994 20 Full-time temporary
Fall quarter 1994 10 Part-time

In its reversal of our earlier decision in this case, the Alabama Supreme Court remanded for further proceedings in the circuit court, noting that it had "made no conclusions as to the validity of [McLeod's]'s factual claims." Ex parte McLeod, 718 So.2d at 687 n. 3 (Ala.1997). The supreme court further stated:
"At oral argument, the parties disagreed as to the exact number of credit hours [McLeod] had taught during certain quarters of different school years. The circuit court is the proper court to first make the necessary factual findings."
Id. At no time during the lengthy proceedings in this case have the parties disagreed about the "exact number of credit hours [McLeod] ... taught during certain quarters of different school years."[2] They agree upon the dates of his employment, the number of credit hours he taught each quarter, and the type of contract he signed. They do disagree, however, about the legal significance of his employment history.
Whether they rely on the FDA or on the ATSJCAA, the parties agree on one thing: that in order to achieve nonprobationary status, or "tenure," McLeod had to be a full-time faculty member for three years. They disagree, however, about what constitutes "full-time" employment and about how the three-year period is to be measured.

When Is a Junior-College Instructor a "Full-Time" Faculty Member?
The college argues that full-time employment is determined by reference to § 16-60-111.4(5) and Chancellor Gainous's interpretation, pursuant to § 16-60-111.5(2), of the Board of Education's rules and regulations concerning junior colleges and trade schools, specifically Board Policy Number 608.01 and Wallace State Policy Number 318.02. Board Policy Number 608.01 states:
"[A] normal full-time instructor load in a state junior college (or junior college division of a state community college) shall be a minimum of 15 hours and a maximum of 21 hours per quarter, or the equivalent, as determined by the president.... [A] full-time instructor's normal working week shall be a minimum of thirty-five hours, exclusive of any regularly scheduled breaks, and the *255 work schedule of each instructor shall be approved by the president."
The Board of Education's "Guidelines for Policy Number 608.01" state:
"Any faculty member employed by an institution of The Alabama College System shall be considered full-time teaching faculty, for salary purposes, once the threshold of 15 credit hours of teaching class load, or the equivalent, per term has been achieved, so long as the faculty member works a minimum of 35 hours per week."

(Emphasis in original.) Wallace State Policy Number 318.02 states:
"A full-time instructor's normal work week is a minimum of thirty-five hours exclusive of any regularly scheduled breaks, and the work schedule of each instructor is approved by the President. This does not mean that every faculty member is on duty seven hours a day, but faculty members must have a regular schedule of instruction, student counselling and preparation."
In an affidavit stipulated to be admissible in this case, Chancellor Fred Gainous stated that, pursuant to the authority given him by § 16-60-111.4(5) and § 16-60-111.5(2), he made the following interpretation of the requirements for tenure:
"I interpret the three-year probationary period required for tenure as a full-time community college instructor to be three consecutive academic years (September 1-August 31) in which the respective instructor works full-time (teaches at least 15 credit hours per quarter and works a total of 35 clock hours during each week of the respective quarter) for at least three academic quarters per academic year."
Based on the foregoing policies and the chancellor's interpretation, the college argues that McLeod did not achieve tenure because he had only 6 quarters of "full-time temporary" employment in which he taught at least 15 credit hours per quarter and was required to be on duty at least 35 clock-hours per week. The college points out that 6 quarters of full-time employment does not amount to 3 years under any system of reckoning, regardless of whether the 3-year period is consecutive or nonconsecutive. The college contends that, for the 9 quarters in which McLeod taught 15 credit hours but was designated "part-time," McLeod cannot be considered "full-time" because he was not required either to be on duty for 35 clock-hours each week or to have his work schedule approved by the president of the college.
The record fully supports the contention that, when McLeod was designated "part-time," he did not have required duties amounting to 35 hours per week and he neither submitted his work schedule nor had it approved by the president. McLeod presented no evidence to the contrary. The evidence was undisputed that, as a part-time employee, McLeod was not required to perform any of the following duties that were expected of full-time faculty: assisting with registration, keeping office hours, serving on faculty committees, sponsoring student organizations, or attending graduation. In fact, the academic dean testified that as a part-time instructor McLeod was required merely "to show up to teach his classes." At trial, McLeod acknowledged that, because the class periods at the college are 50 minutes rather than a full hour, a 15 credit hour schedule actually required him to "teach his classes" for only 12 1/2 hours per week.
McLeod concedes that the 15-credit-hour-per-term requirement is the right criterion for determining full-time status, but he argues that the 35-clock-hour-per-week standard is not correct. Instead, he contends that full-time employment is determined *256 by reference to the FDA, specifically that portion of § 36-26-100 which provides:
"Full-time employees include ... employees whose duties require 20 or more hours in each normal working week of the school term, employing board holidays excepted."
McLeod argues that, pursuant to this quoted portion of the FDA, a junior-college instructor is "full-time" if he works 20 clock-hours per week. He insists that, for every quarter in which he taught 15 credit hours (and for which he signed a contract stating that his employment was part-time, nontenured and did not count toward tenure) he was actually working "full-time" because, he claims, his "duties require[d] 20 or more hours in each normal working week." To that end, he testified at trial that, in addition to the actual time he spent teaching in the classroom each week, he also spent time each week on the following activities: devising a syllabus, reviewing the textbook, planning his lectures, preparing, grading, and making up tests, talking with students about academic and personal problems, reading and watching plays on television (activities that, he testified, were incident to his being a theater instructor); and he argued that all of those activities totalled at least 20 hours per week. McLeod, therefore, claims that he became tenured when he had taught 15 or more credit-hours in each of 9 quartersi.e., at the end of the spring quarter 1992.
The most obvious flaw in McLeod's argument is that, for every 15-credit-hour quarter he claims was "full-time" and counted toward tenure, he signed a contract stating that his employment was part-time, was nontenured, and did not count toward tenure. McLeod does not argue that he has achieved "de facto tenure." De facto tenure exists when a faculty member, although not formally tenured, is able to show through practice or the circumstances of his service that he "has [a] ... legitimate claim of entitlement to job tenure." Perry v. Sindermann, 408 U.S. 593, 602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). McLeod also does not argue that his written contract has been modified, for example, by an oral representation, see, e.g., Talley v. Flathead Valley Cmty. College, 259 Mont. 479, 857 P.2d 701 (1993) (holding that a written contract stating that a community-college instructor had no right to tenure controlled over alleged oral manifestations of continuing employment), or by the incorporation into his contract of a provision in a faculty handbook, cf. Hill v. Talladega College, 502 So.2d 735 (Ala.1987) (holding that a college teacher had not achieved de facto tenure by being employed for 10 years, even if a standard of the American Association of University Professors providing that the period of probationary employment should not exceed 7 years was incorporated into her contract). Because McLeod's part-time contracts were clear and unambiguous and provided him with no expectation that performance thereunder would count toward tenure, we will not now invalidate their provisions. See Hill v. Talladega College, supra, 502 So.2d at 738 (stating that a teacher serving under a term contract "generally has no legally enforceable entitlement to continued employment beyond the contract's stated term").
As we have previously explained, whether McLeod achieved tenure should have been determined by reference to the ATSJCAA, rather than the FDA. We, therefore, hold that the college's reliance on § 16-60-111.4(5), as well as Chancellor Gainous's interpretation of Board Policy Number 608.01 and Wallace State Policy Number 318.02 (all requiring 35 clock-hours per week for full-time faculty) was correct. Nevertheless, assuming, for the *257 sake of McLeod's argument, that the determination of full-time status is dependent upon the FDA's 20-hour-per-week requirement, we conclude that McLeod's assessment of what hours and activities can be counted toward the 20-hour minimum requirement is erroneous as a matter of law.
Even under the FDA, an employee can be considered "full time" only if his "duties require 20 or more hours in each normal working week." See § 36-26-100 (emphasis added). Although the idea that an employee's "required duties" are defined by the employerand not by the employeeis so well accepted as to need no citation to authority, we note that under the FDA the 20-hour-per-week standard means "regularly scheduled working hours," see Carter v. Baldwin County Bd. of Educ., 532 So.2d 1017, 1018 (Ala.Civ. App.1988); Ex parte Green, 689 So.2d 838, 839 (Ala.1996), and "regularly scheduled working hours," are the hours set by the employer, see Ledbetter v. Jackson County Bd. of Educ., 508 So.2d 244 (Ala.1987). As the undisputed evidence indicated, for the nine quarters in which McLeod taught 15 credit hours but was designated as "part-time," the college did not "require" McLeod to perform any duty other than "to show up to teach his classes," and McLeod concedes that he did not spend 20 hours per week on that duty.
If we accepted McLeod's argument that a teacher can define for himself what hours should be counted toward the requirement of full-time employment, and thereby determine for himself when he has achieved tenure, we doubt there would be many part-time teachers in Alabama. We also doubt that Alabama's junior-college system could remain financially solvent. Teachers are members of a learned profession. To their care and expertise our society entrusts the education of the young. They are entitled to great respect. Historically, they have neither expected, nor have they have been required, to punch a time clock. Their compensation is, more often than not, not commensurate with the out-of-class hours they dedicate to their duties. To quote the Supreme Court of Pennsylvania:
"The plaintiff wishes all the perquisites, honors and attention that go with a [tenured teacher's] position, but he wants to observe a time-clock schedule and to be [credited] for every fragmentary hour he applies to his responsibilities after the blackboard dust of the day has settled. That is not only not fitting from a professional point of view; it is not in accordance with the law."
Taggart v. Board of Directors of Canon-McMillan Joint School Sys., 409 Pa. 33, 39-40, 185 A.2d 332, 336 (1962).
On remand after the supreme court's reversal, the circuit court determined that "McLeod's duties required 20 or more hours in each normal working week of the school term, ... that Mr. McLeod performed the 20 or more hours in each normal working week of the school term, and... that Mr. McLeod worked and was employed for sufficient time to obtain tenure." The circuit court ordered the college to pay McLeod the salary he would have earned as a full-time instructor, retroactive to the fall quarter 1994; to credit him with the sick leave and annual leave he would have accumulated since the fall quarter 1994; and to adjust McLeod's retirement benefits accordingly. The court also ordered the college to offer McLeod a contract as a full-time instructor and to pay him as though he had been a full-time instructor since the fall quarter 1994.
We hold that the circuit court erred in applying the law to the facts when it determined that McLeod "was employed for sufficient time to obtain tenure," and when *258 it awarded him backpay and benefits. Because we conclude that McLeod had only six quarters of full-time employment, we need not reach the issue presented by Justice Almon's special concurrence in Ex parte McLeod, 718 So.2d at 689-90 whether the three-year probationary period for junior-college instructors must be consecutive or whether it is subject to the holding in Ex parte Clayton, 552 So.2d 152 (Ala.1989).

Conclusion
The judgment of the circuit court is reversed and the cause is remanded with instructions for the trial court to enter a judgment for Dr. Young and the college.
REVERSED AND REMANDED.
THOMPSON, J., concurs.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur in the result.
YATES, Judge, concurring in the result.
I disagree with the main opinion's conclusion that the Alabama Trade School and Junior College Authority Act, § 16-60-80 et seq., Ala.Code 1975 ("the ATSJCAA"), applies to instructors, such as McLeod, at the state's two-year colleges. Rather, I believe those instructors are governed by the Fair Dismissal Act, § 36-26-100 et seq., Ala.Code 1975 ("the FDA").
The relevant section of the FDA is § 36-26-100. That section is the first section appearing in Article 4 of Chapter 26. That article is entitled: "Dismissal Procedures For Nonteacher, Nonclassified, etc., Employees in Certain School Systems, Institutions, etc." Section 36-26-100 reads:

"The term `employees,' as used in this article, is deemed to mean and include all persons employed by county and city boards of education, two-year educational institutions under the control and auspices of the state board of education,... who are so employed as bus drivers, lunchroom or cafeteria workers, maids and janitors, custodians, maintenance personnel, secretaries and clerical assistants supervisors [sic] and all other persons not otherwise certified by the state board of education. Only full-time employees who are not otherwise covered by the state merit system, the teacher tenure law, or other state statute at the time this article is adopted are intended to be covered by this article. Full-time employees include (a) adult bus drivers and (b) other employees whose duties require 20 or more hours in each normal working week of the school term, employing board holidays excepted. Substitute teachers and substitute employees are excluded from the article."

(Emphasis added.) The fundamental rule of statutory construction is to ascertain and give effect to the Legislature's intent in enacting the statute. Norfolk Southern Ry. v. Johnson, 740 So.2d 392 (Ala.1999). If possible, the Legislature's intent should be gathered from the plain language of the statute. Id. Our supreme court has previously noted that the FDA "is not a model of legislative clarity." Bolton v. Board of School Comm'rs of Mobile County, 514 So.2d 820, 824 (Ala.1987).
In Ex parte McLeod, 718 So.2d 682 (Ala. 1997), Justice Butts concluded that instructors such as McLeod are covered by the FDA, and he based that conclusion on several reasons. Initially, he determined that the defendant's argument that the FDA does not extend to junior-college instructors because the heading of § 36-26-100 specifically refers to "Nonteachers," was defective, because "`the descriptive headings or catchlines immediately preceding or within the text of the individual sections of the Code ... do not constitute part of the law, and shall in no manner limit or expand the construction of any *259 such section.'" Ex parte McLeod, 718 So.2d at 686 n. 2, quoting § 1-1-14, Ala. Code 1975. Justice Butts further noted that the reference to "substitute teachers" in the last sentence of § 36-26-100 conflicts with the defendant's interpretation of the title of the Act. Justice Butts stated: "If all teachers are excluded from the FDA, there would have been no need for the legislature to expressly exclude substitute teachers. We believe that the express exclusion of substitute teachers by the legislature implies the inclusion of other teachers." Id., at 686-87.
Justice Butts next examined the full title of the FDA as it was adopted by the legislature. The title of Act No. 83-644, Ala. Acts 1983, reads:

"AN ACT

"To provide for fair dismissal procedures for non-teachers and non-certified or classified employees in the public school systems, two-year institutions under control of the State Board of Education,... who are not otherwise covered by the State's Merit System, the Teacher Tenure Law, or other state statutes at the time this Act is adopted; to provide procedural and substantive due process of law for dismissal for just cause before the employing board after the employee completes the probationary period of employment and thereafter gains permanent status; to provide for an employee review panel to hear contested termination of employment and transfer; and to provide for review of the decisions of the employing board." (Emphasis added.) In interpreting that title, as well as the language in § 36-26-100, Justice Butts stated:
"The language excluding those employees covered by the state merit system, the teacher tenure law, or another state statute is repeated in § 36-26-100. Giving literal meaning to the legislature's plain language used in the full title and in § 36-26-100, we believe that instructors such as McLeod ... at two-year colleges fall within coverage of the Act. They are not certified by the State Board of Education; thus, they are noncertified employees of a two-year institution under the control of the State Board of Education. Further, they are not covered by either the State's merit system or the teacher tenure law. Finally, although the defendants argue that [McLeod was] covered by an `other state statute' at the time the FDA was passed, specifically § 16-60-111.4, that statute did not itself create due process protections for employees such as [McLeod]. Thus, the full title of the Fair Dismissal Act supports [McLeod's] position."
Ex parte McLeod, 718 So.2d at 687.
Finally, Justice Butts concluded that the rule of ejusdem generis has no application to the interpretation of the term "employees" in § 36-26-100. By the rule of ejusdem generis, "general words, following the enumeration of particular classes of persons or things, are construed to apply only to persons or things of the same general nature or class as those specifically enumerated." Lambert v. Wilcox County Comm'n, 623 So.2d 727, 731 (Ala.1993). However, the rule does not apply if an examination of the entire text makes "it apparent that the Legislature intended the general words to go beyond the class specifically designated." Moore v. City of Mobile, 248 Ala. 436, 440, 28 So.2d 203, 207 (1946). Justice Butts concluded that a review of the "text of § 36-26-100 and the full title of the FDA reveal a legislative intent to include some teachers under the FDA," and, therefore, that the rule of ejusdem generis has no application. Ex parte McLeod, 718 So.2d at 687.
*260 I recognize that we are not bound by Justice Butts's opinion in Ex parte McLeod; however, after reviewing that opinion, I find it to be well reasoned and dispositive of the issue presented in this case. Therefore, I would adopt Justice Butts's opinion and hold that the FDA applies to junior-college instructors such as McLeod.
I do agree, however, with Judge Crawley's conclusion that McLeod did not obtain tenure under the FDA. Therefore, I concur in the judgment reversing the trial court's judgment holding that McLeod had obtained tenure under the provisions of the FDA.
ROBERTSON, P.J., and MONROE, J., concur.
NOTES
[1] In its first opinion, this court dealt with the appeals of two instructors at Wallace State Community College, John McLeod and Barbara Dinkins, who had both sued the college and its then president, Dr. Larry Beaty. Ms. Dinkins settled her claim with the college and is now deceased. The college has a new president, Dr. Linda Young, who has been substituted for former President Beaty.
[2] The supreme court may have confusedas this court did in McLeod v. Beaty, 718 So.2d at 676McLeod's argument that he was "full time" during the 15 academic quarters during which he taught 15 or more credit hours, with the facts establishing, without dispute, that McLeod signed a contract and was designated "full-time temporary" for only 6 academic terms.