This case involves a claim for back pay and benefits due an employee of Chattahoochee Valley Community College.
On September 30, 1981, James E. Davis was terminated from his employment with Chattahoochee Valley Community College (C.V.C.C.). He petitioned for writ of mandamus in Russell County Circuit Court, requesting that C.V.C.C.'s president, James E. Owen, be ordered to reinstate him to his former position and provide him with back pay and other benefits accruing during the period of his termination. The court so ordered. Owen appealed here, and we dismissed for failure to timely file notice of appeal. Owen v. Davis, 436 So.2d 26 (Ala. 1983) (mem.).
After Davis was reinstated, a dispute arose as to the amount of back pay and benefits due him. Davis contended that he was entitled to $7,369.50 back pay in addition to the $39,593.00 he received, and that he was also entitled to be paid for 22 days' sick leave and 22 days' annual leave accruing during the period of his termination. He also contended that he should be reimbursed for $1,683.55 in medical expenses incurred during the same period.
A second hearing was held to determine the amount of back pay and benefits due Davis. Thereafter, the court issued the following order:
 "This cause comes before the Court for a determination of the amount of salary, sick leave, retirement, and annual leave to which the Plaintiff will be entitled, after the Supreme Court of Alabama dismissed the appeal of the Defendant, James E. Owen, on July 5, 1983. Upon consideration of the evidence and testimony taken Ore Tenus at said hearing, the Court finds as follows:
 "I. Sick Leave. Pursuant to the rules and regulations of the State Board of Education governing State Community and Junior Colleges an employee is not entitled to receive pay in lieu of sick leave. Sick leave can be accumulated up to a maximum of 150 days, receiving one day per month credit for each month of employment.
 "II. Annual Leave. The rules and regulations of the State Board of Education as applying to State Community and Junior Colleges provide that employees may accumulate annual leave at the rate of one day per month of employment up to a maximum of 18 days. Said rules and regulations further provide that persons leaving employment shall be paid for the number of days actually earned. The Court finds that James E. Davis was paid for his accumulated annual leave as of his termination of September 30, 1981. The Court further finds that Mr. Davis accumulated annual leave from October 1, 1981, to September 30, 1983, totaling 18 days. This is pursuant to the Court's order of August 13, 1982. The evidence presented showed that Mr. Davis had taken nine of those days as of the hearing of September 9, 1983, and that Mr. Davis had nine remaining annual leave days as of that hearing.
 "III. Insurance Benefits. The Court finds that the evidence of James E. Davis relating to the claim for medical benefits for the period of time from October 1, 1981 to July 31, 1983 were speculative and unproven.
 "IV. Retirement. The Court finds that James E. Davis received all retirement benefits to which he was entitled at the time of his termination on September 30, 1981.
 "V. Salary. The evidence presented at the hearing established that Chattahoochee Valley Community College had experienced a decrease in student enrollment which had resulted in a substantial *Page 1302 
decrease in months [sic] appropriated to the College for the years 1981-82 and following. The evidence further indicated that Dr. Wayne Teague, State Superintendent of Education, found in a memorandum dated April 30, 1981, that certain employees had been inappropriately placed on salary schedules based upon that employee's duties, experience, educational background and/or administrative assignments and that such employee should be placed upon the appropriate salary schedule. . . . Defendant, James E. Owen, testified that the position of Director of Physical Plant was eliminated for the school year 1981-82 and that elimination of this position resulted in the termination of James E. Davis. . . . Because of the elimination of said position, no funds were budgeted for such a position for the school year 1981-82 and no salary was set. This Court by its order of August 13, 1982, ordered that James E. Davis be reinstated and the issue presented at the September 9, 1983, hearing concerned the salary to which Mr. Davis would be entitled. The testimony of Dr. Owen stated that had Mr. Davis been employed for 1981-82, he would have been placed upon Salary Schedule C-3, the third administrative level. Placement upon this Schedule presumes negotiation of the employee's salary. . . . Dr. Owen further testified that in so placing James E. Davis on Salary Schedule C-3, Mr. Davis would have received a salary of $21,048.00 for the year 1981-82. Dr. Owen further stated that based upon the same premises, James E. Davis would have received a salary of $22,254.00 for the school year 1982-83.
 "This Court finds that the Defendant, James E. Owen, had the authority pursuant to the Rules and Regulations of the State Board of Education to place James E. Davis on Salary Schedule C-3 for the school year 1981-82 and subsequent years. Therefore, this Court finds that the determination of the salary of $21,048.00 for the year 1981-82 is correct and the salary of $22,254.00 for the year 1982-83 is correct.
"It is, therefore,
 "ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:
 "1. That the claim by the Plaintiff for payment of accrued sick leave is denied and the Defendant is ordered to credit the Plaintiff with sick leave which would have accrued from October 1, 1981.
 "2. That the Defendant is to credit the Plaintiff with annual leave which would have accrued from October 1, 1981 at the rate of one annual leave day per month up to the maximum permitted by policy, i.e. 18 days.
 "3. That the Plaintiff's claim for medical benefits be and the same is hereby denied.
 "4. That the Defendant is ordered to pay the Plaintiff the sum of $21,048.00 as salary for 1981-82 and the sum of $22,254.00 for the year 1982-83."
Davis appeals here, contending that the trial court erred in its findings. We find no reversible error and affirm.
As we have countless times stated, where, as here, the trial court's findings are based upon evidence heard ore tenus, those findings are favored with a presumption of correctness and will not be disturbed on appeal if supported by evidence or any reasonable inference therefrom, unless plainly and palpably erroneous or manifestly unjust. Chaffin v. Hall, 439 So.2d 67
(Ala. 1983).
Upon reviewing the evidence presented, we cannot say that the trial court's findings were either wrong or unjust. The evidence clearly shows that Davis was dismissed, along with other administrative employees, in an attempt to reduce costs. The evidence also shows that, subsequent to Davis's termination, certain salaries at C.V.C.C. were reduced because of budget proration and decreased enrollment and in accordance with a recommendation made by the post-secondary educational services division of the State Board of Education. The evidence shows that the State Board of Education gave President *Page 1303 
Owen authority to make the necessary salary reductions, that he did so solely to reduce costs, and that, upon his reinstatement, Davis's salary was one of those reduced. Because this was within Owen's discretion, we see no error.
The evidence shows that the parties stipulated at trial that, although Davis would not be paid for sick leave accumulating during the period of his termination, he would receive credit for those days. Therefore, this issue is not before us.
As to annual leave, the evidence shows, and the trial court correctly found, that Section 609.08 of the Policies, Procedures and Regulations Governing Alabama State Community, Junior and Technical Colleges/Institutes, 1979, provides that "Full-time noninstitutional personnel," like Davis, may not accumulate more than eighteen days' annual leave. In view of this, we see no error in the court's determination that Davis should be credited with eighteen days' annual leave.
The evidence is also supportive of the court's determination that Davis's claim for medical insurance benefits was too speculative. The evidence shows that, although Davis and his family were insured by C.V.C.C.'s insurance carrier at the time he was terminated, subsequent to that time, employees of the state's 2-year educational institutions voted to make the institutions self-insured, establishing a self-insured trust for this purpose.[1]
The evidence shows that the trust has since become insolvent, and owes the participating employees some $600,000 for insurance claims filed but never paid. Because Davis, but for his termination, would have filed his insurance claim during the pendency of the now insolvent trust, it is uncertain whether he would have been reimbursed for his claim. Therefore, had his claim been timely filed, his status would be identical to that of the other unsatisfied claimants now seeking reimbursement from this trust. Thus, his possibility of recovery would be, at best, speculative.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] The institutions are presently insured through another insurance carrier. However, this coverage became effective on January 1, 1983, subsequent to Davis's claim.