[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 675 
John McLeod, a speech and theater instructor, and Barbara Dinkins, a biology instructor, are both employed by Wallace State Community College in Dothan (the College). In 1994, the instructors filed in the circuit court separate actions for declaratory judgments and petitions for writs of mandamus directed to the College and to Dr. Larry Beaty, individually and in his capacity as president of the College. The instructors alleged that, by reason of the length of their employment with the College, they had gained tenure but had not been offered full-time nonprobationary contracts of employment.
McLeod and Dinkins claim that, as employees of a state junior college, they are protected by the provisions of the Fair Dismissal Act, Ala. Code 1975, § 36-26-100 et seq. (the FDA); that the FDA prohibits a partial termination of their employment without notice and a hearing; and that the College had partially terminated them by reducing their course teaching loads without notice or a hearing. McLeod and Dinkins sought orders directing Dr. Beaty to recognize them as tenured employees and to issue them full-time contracts of employment. In addition, McLeod and Dinkins sought back pay and damages.
The College and Dr. Beaty maintain that McLeod and Dinkins are not tenured employees and are not covered by the FDA. The College and Dr. Beaty also assert that they are immune from suit under § 14 of the Alabama Constitution of 1901 and that the circuit court lacked jurisdiction over these actions because McLeod and Dinkins failed to exhaust the administrative remedies available to them.
The circuit court entered summary judgments for the College and Dr. Beaty; McLeod and Dinkins appealed. The parties did not seek to consolidate the cases below or on appeal. However, because the same issues are presented in both cases, we have consolidated the appeals on our own motion pursuant to Rule 3 (b), Ala. R. App. P.
 Exhaustion of Administrative Remedies
We must first address the jurisdiction of the circuit court to adjudicate the claims of McLeod and Dinkins because, if the circuit court had no jurisdiction to consider their claims, then we have no jurisdiction to consider their appeals. See Ollis v.Ollis, 636 So.2d 458 (Ala.Civ.App. 1994).
"In some instances, a complainant is not entitled to judicial relief . . . unless the complainant has first exhausted his or her administrative remedies." Faulkner v. University ofTennessee, 627 So.2d 362, 365 (Ala. 1992), cert. denied,510 U.S. 1101, 114 S.Ct. 943, 127 L.Ed.2d 233 (1994). In this case, the trial court held that McLeod and Dinkins had failed to exhaust their administrative remedies and it entered a summary judgment against them. In Faulkner v. University of Tennessee, supra, our supreme court noted that a circuit court should not enter a summary judgment (which is a judgment on the merits) if the circuit court concludes that, because of the application of the exhaustion doctrine, the circuit court does not have jurisdiction to adjudicate the claim. 627 So.2d at 364.
Citing Ex parte Graddick, 495 So.2d 1367 (Ala. 1986); Mobile Gulf R.R. v. Crocker, 455 So.2d 829 (Ala. 1984); and City ofHuntsville v. Smartt, 409 So.2d 1353 (Ala. 1982), the College and Dr. Beaty argue that McLeod and Dinkins failed to exhaust the administrative remedies available to them.
The College claims that the instructors, in order to enforce their alleged tenure rights, should first have appealed to the chancellor of the Postsecondary Education Department. The College argues that a right of administrative review of tenure decisions is inherent *Page 676 
in the statutory authority given to the chancellor under §16-60-111.5.
Although § 16-60-111.5 may authorize the chancellor to conduct a review, it does not require an instructor to seek such a review before resorting to other remedies. That fact distinguishes this case from those cited by the College.
When "the threshold question . . . is whether [an instructor at a state community college is] tenured, [t]hat is a proper issue to be litigated in circuit court." Owen v. Rutledge,475 So.2d 826, 827 (Ala. 1985). See also Dansby v. Dale County Board ofEducation, 623 So.2d 1122, 1123 n. 1 (Ala. 1993) (quoting AlabamaAss'n of School Boards v. Walker, 492 So.2d 1013, 1015 (Ala. 1986) ("When a person's `status as a tenured teacher' is the issue in dispute, `the circuit court is the proper forum to resolve that dispute'")); Berry v. Pike County Board of Education,448 So.2d 315 (Ala. 1984).
The trial court erred in holding that the instructors' claims were precluded by the doctrine of exhaustion of administrative remedies, but that holding is harmless because, as will be discussed below, the instructors were not entitled to the relief sought.
 Sovereign Immunity
We need not decide whether the trial court erred by determining that the doctrine of sovereign immunity barred the actions against Dr. Beaty and the College, because the trial court's judgments were correct for other reasons. See Sammons v. Ritchey,484 So.2d 409 (Ala. 1986). If the judgment of the trial court is correct, it will be upheld on appeal, even if the trial judge gave a wrong or insufficient reason therefor. Bank of theSoutheast v. Koslin, 380 So.2d 826 (Ala. 1980); Kite v. Kite,444 So.2d 863 (Ala.Civ.App. 1983).
 McLeod's Employment History at the College
From March 1984 through November 1994, McLeod was employed by the College as an adjunct instructor on a quarter-by-quarter basis, for a total of 32 academic quarters. Of those 32 quarters, he was employed as a part-time instructor for 17 quarters and as a "full-time temporary" instructor for 15 quarters.
McLeod was employed part-time from 1984 until 1988. Then, in January of 1988, he signed his first contract designating him as a "full-time temporary" instructor for the winter quarter of that academic year. For the spring quarter of that year, however, he was employed part-time. Then, for the summer quarter of that year, he was again employed full-time. His quarter-by-quarter employment at the College was sometimes full-time, and sometimes part-time, until the fall quarter of 1992. Then, from the fall of 1992 through the fall of 1994, McLeod was employed as a "full-time temporary" instructor for three quarters in each of two academic years.
For each period of employment, whether full-time or part time, McLeod had an employment contract that specified a starting date and an ending date and that was subject to the following pertinent "Terms and Conditions":
 "6. It is understood that only full-time [faculty] members with continuing service status have the expectancy of continued employment beyond the contract period. If continuing service status has not been achieved, then this contract shall not be construed as binding on either party beyond its specified dates, and there is no expectancy, expressed or implied, of continued employment beyond the contract period.
 "10. Part-time faculty are temporary. Part-time positions are non tenured and part-time experience does not apply toward tenure.
 "11. No guarantee of employment for part-time faculty is expressed or implied beyond the contract period."
 Dinkins's Employment History at the College
Between 1978 and 1982, Dinkins was a full-time clerical employee of the College for 38 months. From 1982 through 1986, she was not employed at the College. Then, from *Page 677 
January 1987 through May 1990, she was a part-time instructor. For the summer quarter of 1990, she taught as a "full-time temporary" instructor. From March 1992 through March 1994, she was employed for a total of seven academic quarters as a "full-time temporary" instructor pursuant to the same kinds of contracts that McLeod had.
 The Fair Dismissal Act
McLeod and Dinkins claim that they are protected by the FDA. That legislation was enacted in 1983, with the stated purpose, as evidenced by the title of the Act, of providing "Dismissal Procedures for Nonteacher, Nonclassified, etc., Employees in Certain School Systems, Institutions, etc." See Act No. 644, 1983 Ala. Acts 1004, codified at Ala. Code 1975, § 36-26-100 etseq. (emphasis added). The College argues that the FDA does not apply to McLeod and Dinkins (or any other junior college instructor) because, it claims, the Act covers only "nonteacher employees."
In Bolton v. Board of School Commissioners of Mobile County,514 So.2d 820 (Ala. 1987), the Alabama Supreme Court observed:
 "The procedure for terminating the employment of a full-time nonteacher or nonclassified school system employee is found in Title 36 . . . of Alabama Code 1975. Chapter 26, Article 4, `Dismissal Procedures for Nonteacher, Nonclassified, etc., Employees in Certain School Systems, Institutions, etc.' (also known as the `Fair Dismissal Act') was enacted in 1983 and became effective on July 26, 1983."
Id. at 822 (emphasis added). The supreme court has repeatedly noted that "the overall purpose of the `Fair Dismissal Act' . . . is to provide non-teacher employees a fair and swift resolution of proposed employment terminations." Id. at 824 (emphasis added). See also Ex parte Holifield, 604 So.2d 420, 422
(Ala. 1991); Ex parte Alabama Institute for Deaf Blind,578 So.2d 1308, 1310 (Ala. 1991).
This court has also frequently observed that the Act applies to "nonteacher" employees. See Gainous v. Tibbets, 672 So.2d 800,803 (Ala.Civ.App. 1995); Williams v. Ward, 667 So.2d 1375, 1377
(Ala.Civ.App. 1994); Saulsberry v. Wilcox County Board ofEducation, 641 So.2d 283, 285 (Ala.Civ.App. 1993); Hardy v.Birmingham Board of Education, 601 So.2d 87, 92 (Ala.Civ.App.), rev'd on other grounds, Ex parte Birmingham Board of Education,601 So.2d 93 (Ala. 1992).
Despite our observations about the scope and purpose of the FDA, this court held in 1988 that the FDA applies to community college instructors. See Clayton v. Board of SchoolCommissioners, 552 So.2d 145 (Ala.Civ.App. 1988), rev'd on other grounds, Ex parte Clayton, 552 So.2d 152 (Ala. 1989), overruled on other grounds, Ex parte Birmingham Board of Education,601 So.2d 93 (Ala. 1992).
Clayton was a consolidated appeal of two cases: Clayton v.Board of School Commissioners of Mobile County and Day v.Southwest State Technical College.[1] The plaintiffs in Day
were instructors working pursuant to a three-month contract at a two-year educational institution. Apparently, the applicability of the FDA to community college instructors was not raised or questioned in Day. This court's holding that the FDA applied to the instructors was never examined by the Alabama Supreme Court because only the Clayton plaintiffs, who were not teachers, petitioned for certiorari review. See Clayton v. Board of SchoolCommissioners of Mobile County, 552 So.2d 155, 156
(Ala.Civ.App. 1989) (on remand from the Alabama Supreme Court).
Four years after Clayton and Day, this court decided Williamsv. Ward, 612 So.2d 489 (Ala.Civ.App. 1992) (Williams I). In that case, a commercial sewing instructor who had been discharged from Lawson State Community College sought reinstatement. Williams, the instructor, claimed that he was protected by the provisions of the FDA, and that the trial court had erred by holding that the Act did not apply to him. This court observed that it could not determine from *Page 678 
the record whether Williams was covered by the FDA because
 "[f]or all that appears, Williams may be in a tenured position, his employment may be parttime, or he may merely be a temporary employee of Lawson."
This court remanded the cause for the trial court to determine "the nature of Williams's employment status." Id. On remand, the parties agreed that Williams was a full-time, tenured instructor. The trial court held that the FDA did not apply to Williams, and this court affirmed. We observed:
 "[T]he Act does not apply to college teachers such as Williams. . . . [O]n the narrow issue of the applicability of the Act to Williams as a full-time, tenured instructor at Lawson, Ward was entitled to judgment as a matter of law, and the summary judgment was proper."
Williams II, 667 So.2d at 1377. The narrow holding of Williams II
is that the FDA does not apply to full-time, tenured instructors at two-year educational institutions. We acknowledge that a broad reading of Williams I and Williams II, together with Day, might lead to the conclusion that the FDA does apply to full-time,nontenured instructors — instructors such as McLeod and Dinkins.
In Williams II, we did not cite or distinguish Day, but Day was distinguishable: the teachers in Day were nontenured, whereas the teacher in Williams was tenured. That distinction enabled us to decide Williams without expressly overruling Day. No such distinction, however, is possible in the cases now before us. Unless we overrule Day, we must hold that the FDA applies to McLeod and Dinkins. For the reasons that follow, we conclude thatDay was wrongly decided and should be overruled.
First and most obviously, we conclude that the FDA does not apply to teachers because the title of the Act states that its purpose is to provide a dismissal procedure for nonteachers.Day's holding that the FDA does apply to teachers could result in a conclusion that the Act violates Ala. Const. art IV, § 45. That constitutional provision mandates that "[e]ach law shall contain but one subject, which shall be clearly expressed in its title."
 "The object of the constitutional provision has been held to be three fold, first, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, and in order that they may have the opportunity of being heard thereon, by petition or otherwise, if they shall so desire; second, truly to inform members of the legislature who are to vote upon the bill, what the subject of it is so that they may not perform that duty, deceived or ignorant of what they are doing; and third, to prevent the practice of embracing in one bill several distinct matters, none of which, perhaps could singly obtain the assent of the legislature, and then procuring its passage by a combination of the minorities in favor of each of the measures, into a majority that will adopt them all."
State ex rel. Bozeman v. Hester, 260 Ala. 566, 573, 72 So.2d 61,66 (1954).
Whenever possible, a court should construe an act so that it does not conflict with constitutional requirements. State v.Ballard, 341 So.2d 957, 959 (Ala.Crim.App. 1976), writ quashed,341 So.2d 962 (Ala. 1977). When a statute is capable of two constructions, one that renders it valid and one that renders it invalid, the construction that will uphold its validity must be adopted. James v. Todd, 267 Ala. 495, 505, 103 So.2d 19, 27, appeal dismissed, 358 U.S. 206, 79 S.Ct. 288, 3 L.Ed.2d 235
(1958). A statute should be construed, if possible, "so as to avoid not only a conclusion that it is unconstitutional, but also grave doubts on that score." State v. Mills, 278 Ala. 188, 193,176 So.2d 884, 888 (1965), reversed on other grounds,384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). Because the title of the FDA would lead a reasonable person to believe that it is limited to nonteachers, we believe that the holding in Day raises doubts about the constitutionality of the FDA and should no longer be followed.
The wording of the Act also dictates the conclusion that it does not apply to teachers. Section 36-26-100 provides, in pertinent part, the following definition of "employees": *Page 679 
 "The term `employees,' as used in this article, is deemed to mean and include all persons employed by . . . two-year educational institutions under the control and auspices of the state board of education . . . who are so employed as bus drivers, lunchroom or cafeteria workers, maids and janitors, custodians, maintenance personnel, secretaries and clerical assistants, supervisors and all other persons not otherwise certified by the state board of education. Only full-time employees who are not otherwise covered by the state merit system, the teacher tenure law, or other state statute at the time this article is adopted are intended to be covered by this article. Full-time employees include (a) adult bus drivers and (b) other employees whose duties require 20 or more hours in each normal working week of the school term, employing board holidays excepted. Substitute teachers and substitute employees are excluded from the article."
"`Ejusdem generis' is a general principle of statutory construction under which general words, following [or preceding] the enumeration of particular classes of persons or things, are construed to apply only to persons or things of the same general nature or class as those specifically enumerated." Lambert v.Wilcox County Comm'n, 623 So.2d 727, 731 (Ala. 1993). See alsoGilford Partners v. Pizitz, 630 So.2d 404 (Ala. 1993), cert. denied, 512 U.S. 1204, 114 S.Ct. 2672, 129 L.Ed.2d 808 (1994).
 "The doctrine of ejusdem generis is an attempt to reconcile an incompatibility between specific and general words in view of other rules of construction that all words in a statute are to be given effect, if possible; that parts of a statute are to be construed together; and that the legislature is presumed not to have used superfluous words. . . . The rule `accomplishes the purpose of giving effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words.'"
Trans-Lux Corp. v. State ex rel. Sweeton, 366 So.2d 710, 719
(Ala. 1979) (Beatty, J., dissenting) (quoting D. Sands, 2A Sutherland Statutory Construction, § 47.17 (4th ed. 1973)).
In § 36-26-100, the statutory phrases "all other persons" and "all persons" are preceded and followed by "bus drivers, lunchroom or cafeteria workers, maids and janitors, custodians, maintenance personnel, secretaries and clerical assistants, [and] supervisors." The "other persons" covered by the FDA must, therefore, be limited to the same kinds of employees as those specifically enumerated: nonprofessional, year-round support staff — not instructional personnel. See Uwakolam v. HuntsvilleCity Board of Education, 554 So.2d 1036, 1038 (Ala.Civ.App. 1989) ("[t]he employees dealt with under §§ 36-26-100, et seq., are nonteachers employed year round").
That construction of the word "employees" in § 36-26-100
accords with the purpose of the FDA: to provide nonteachers with the same kind of employment protection that, up until 1983, had been available only for teachers. In 1983, there was simply no reason for the legislature to have made the FDA applicable to teachers at state community colleges. Those teachers had been protected by a tenure policy for at least 16 years.
 "In 1967, the State Board of Education, in which is vested the management and control of trade schools and junior colleges, passed a resolution which adopted the Alabama Teacher Tenure Law as the Board's tenure policy for trade and technical schools.[2] That resolution's expressly stated intent was to give teachers in the State trade schools the same job security as other public school teachers and to do so under the same conditions and procedures used by the public schools. ___________
 [2] "In its pertinent part the 1967 resolution reads as follows:
"Tenure for Teachers in State Trade Schools
 "On motion of Dr. Nettles, seconded by Mr. Dannelly, the resolution set forth below was unanimously adopted:
 "WHEREAS, teachers in the State trade schools are not, by designation, included under the Alabama Teacher Tenure Law, and
 "WHEREAS, such teachers have been by practice excluded; and
 "WHEREAS, such teachers are entitled to such job security as others in public education have; and
 "WHEREAS, the State Board of Education is empowered to issue rules and regulations for the *Page 680 
administration of these schools provided such rules and regulations do not run contrary to State law;
 "THEREFORE BE IT RESOLVED That the Alabama State Board of Education by this resolution does declare it as the intent of this Board that teachers in the State trade schools shall have the same job security as other public school teachers have and under the same conditions and procedures as contained in the Alabama Teacher Tenure Law."
Hulcher v. Taunton, 388, So.2d 1203, 1204-05 n. 2 (Ala. 1980). In 1974, the State Board of Education passed another resolution outlining the conditions and procedures for determining tenure in the state's technical and trade schools. Id. at 1205 n. 3. Under the 1974 resolution, an instructor obtained tenure if he or she had "served under contract at the same institution for three consecutive years [and was] reemployed by the institution for the fourth year." Rogers v. Alabama State Board of Educ.,419 So.2d 229, 230 (Ala.Civ.App. 1982). See also Christeson v. NorthwestAlabama State Junior College, 371 So.2d 426 (Ala.Civ.App. 1979).
In 1979, the Board
 "implemented and published its Policies, Procedures, and Regulations Governing Alabama State Community, Junior, and Technical Colleges/Institutes, 1979 (hereinafter Regulations); these Regulations provide, inter alia, for the certification of post-secondary teachers, the attainment of Continuing Service Status (tenure) by faculty members, and a procedure to be followed in cases involving termination."
Williams v. Ward, 667 So.2d at 1376-77 (Williams II).
In 1982, one year before it enacted the FDA, the legislature passed the Alabama Trade School and Junior College Authority Act. See Act No. 486, 1982 Ala. Acts 805, codified at Ala. Code 1975, § 16-60-110 et seq. (the Postsecondary School Act). That legislation created a Department of Postsecondary Education, "[a] parallel organization to the State Department of Education directly responsible to the State Board of Education for the direction and supervision of junior colleges and trade schools and community colleges with a chief executive officer entitled chancellor." Ala. Code 1975, § 16-60-110 (6). The chancellor is authorized to recommend to the State Board of Education "qualifications for faculty and establish a salary schedule andtenure requirements for faculty at each junior college and tradeschool." Ala. Code 1975, § 16-60-111.4 (5) (emphasis added).
Based on the foregoing authorities, we conclude that the trial court correctly held that the FDA does not apply to instructional personnel. We disavow any language in Williams I or Williams II
that implies otherwise, and we overrule Day v. Southwest StateTechnical College.
 Tenure
Because the FDA does not apply to McLeod and Dinkins, they can claim no right to tenure under that Act. The tenure regulations pertaining to them are found in the "Policies, Procedures, and Regulations Governing Alabama State Community, Junior, and Technical Colleges/Institutes, 1979," specifically § 617(3)(A) of the "Revised Hearing Procedure" (RHP), and the Chancellor's interpretation of those regulations. This court observed in Williams II:
 "Legislation creating the Post-Secondary Education Department also provides that `the state board of education, upon recommendation of the chancellor, shall be authorized to: . . . (5) Prescribe qualifications for faculty and establish a salary schedule and tenure requirements for faculty at each junior college and trade school.' Ala. Code 1975, § 16-60-111.4 (5)."
667 So.2d at 1376. Section 16-60-111.5, Ala. Code 1975, provides:
 "The chancellor shall act as chief executive officer of the Postsecondary Education Department of the State Board of Education and will direct all matters involving the junior colleges and trade schools within the policies of the State Board of Education. The chancellor shall:
". . . .
 "(2) Interpret the rules and regulations of the board concerning the junior colleges and trade schools.
". . . .
 "(4) Have the authority to take any and all actions necessary and proper to administer *Page 681 
policies, rules and regulations of the board in carrying out its responsibility for the management and operation of the junior colleges and trade schools."
Following the passage of the FDA, the RHP regulations were revised in 1984. Pursuant to § 617(3)(A) of the revised regulations, a full-time instructor is "employed on a probationary status for a period of three years from the date of his or her initial employment."
Dr. Fred Gainous is the chancellor of the Postsecondary Education Department. In an affidavit filed in these cases, Gainous described his interpretation of the "three-year employment" requirement:
 "Pursuant to my interpretive and enforcement authority, I have reviewed the Revised Hearing Procedure of the State Board of Education in terms of the requirements for the attaimnent of tenure by full-time instructors in State Community colleges.
 "I interpret the three-year probationary period required for tenure as a full-time community college instructor to be three consecutive academic years (September 1 — August 31) in which the respective instructor works full-time (teaches at least 15 credit hours per quarter and works a total of at least 35 clock hours during each week of the respective quarter) for at least three academic quarters per academic year."
Dr. Gainous stated that he had reviewed the employment history of McLeod and Dinkins and had concluded that neither instructor had attained tenure. Gainous concluded that McLeod did not have tenure because, although McLeod had 15 quarters of full-time employment, he did not have three consecutive years during which he had taught three out of four academic quarters each year. Gainous decided that Dinkins did not have tenure because she had had only eight academic quarters of full-time employment, and eight quarters could not amount to three years under any method of calculation.
Because Gainous is the official charged by the legislature with "establish[ing] . . . tenure requirements for faculty at each junior college and trade school," Ala. Code 1975, §16-60-111.4 (5), and with "interpret[ing] the rules and regulations of the board concerning the junior colleges and trade schools," Ala. Code 1975, § 16-60-111.5, his interpretation was entitled to be given great weight by the trial court and by this court. See Hulcher v. Taunton, 388 So.2d at 1206.
The trial court did not err by concluding that, pursuant to the RHP regulations, McLeod and Dinkins were nontenured instructors.
The judgments of the trial court are affirmed.
AFFIRMED.
THIGPEN, J., concurs.
MONROE, J., concurs in the result.
ROBERTSON, P.J., and YATES, J., concur in part and dissent in part.
[1] These appeals were consolidated and are reported at the same page of the Southern Reporter. The issues raised by the Clayton plaintiffs were different from the issues pertinent to the Day plaintiffs. Because only the issues presented in Day are relevant here, we shall refer to the case as Day.