841 So.2d 268 (2002)
Dr. Linda YOUNG, in her official capacity as president of George C. Wallace State Community College; and George C. Wallace State Community College
v.
John McLEOD.
2990440.
Court of Civil Appeals of Alabama.
June 28, 2002.
*269 Edward M. George and Jeffery A. Foshee of Foshee & George, L.L.C., Montgomery; and R. Ranier Cotter of Cassady, Fuller & Marsh, Enterprise, for appellants.
Gregory B. Stein of Stein & Brewster, Mobile; and Thomas K. Brantley of Parkman, Brantley, LaMere & Atwell, Dothan, for appellee.

On Remand from the Supreme Court and On Application for Rehearing
CRAWLEY, Judge.
The opinion of this court issued on April 12, 2002, is withdrawn, and the following is substituted therefor.
This is the third time the parties have been before this court. See McLeod v. Beaty, 718 So.2d 673 (Ala.Civ.App.1996) ("McLeod I"), reversed and remanded, 718 So.2d 682 (Ala.1997), and Young v. McLeod, 841 So.2d 245 (Ala.Civ.App.) ("McLeod II"), reversed, Ex parte McLeod, 841 So.2d 260 (Ala.2001).
John McLeod, an adjunct instructor of speech and theater at George C. Wallace State Community College ("the college"), sued the college and its then president, Dr. Larry Beaty,[1] seeking backpay and benefits as a full-time tenured instructor. At different times between 1984 and 1994, McLeod had been employed by the college as a "part-time" or "full-time temporary" faculty member. The following chart sets out what the parties agree represents McLeod's employment history at the college:

Date of Employment Hours Taught Type of Contract
Spring quarter 1984 10 Part-time
Winter quarter 1985 5 Part-time
Fall quarter 1985 5 Part-time
Winter quarter 1986 5 Part-time
Spring quarter 1986 5 Part-time
Summer quarter 1986 5 Part-time
Fall quarter 1986 5 Part-time
Winter quarter 1987 10 Part-time
Spring quarter 1987 5 Part-time
Fall quarter 1987 5 Part-time
Winter quarter 1988 15 Part-time
Spring quarter 1988 10 Part-time
Summer quarter 1988 15 Part-time
Fall quarter 1988 10 Part-time
Winter quarter 1989 15 Part-time
Spring quarter 1989 15 Part-time
Fall quarter 1989 10 Part-time
Winter quarter 1990 15 Part-time
Spring quarter 1989 15 Part-time
Fall quarter 1990 15 Part-time

*270
Winter quarter 1991 20 Full-time temporary
Spring quarter 1991 10 Part-time
Fall quarter 1991 15 Part-time
Winter quarter 1992 10 Part-time
Spring quarter 1992 25 Full-time temporary
Fall quarter 1992 15 Part-time
Winter quarter 1993 15 Part-time
Spring quarter 1993 25 Full-time temporary
Fall quarter 1993 25 Full-time temporary
Winter quarter 1994 25 Full-time temporary
Spring quarter 1994 20 Full-time temporary
Fall quarter 1994 10 Part-time

McLeod argued that the Fair Dismissal Act, § 36-26-100 et seq., Ala.Code 1975 ("the FDA"), applied to him; that the FDA governed tenure requirements for junior-college instructors; and that under the FDA he had earned tenure.
In McLeod II, three members of this court determined that the FDA applies to nontenured junior college instructors such as McLeod. Two members of the court concluded that the FDA does not apply and that, instead, the Alabama Trade School and Junior College Authority Act, § 16-60-80 et seq., Ala.Code 1975 ("the ATSJCAA"), provides the tenure requirements for instructors like McLeod. Although this court was divided in McLeod II over whether the FDA or the ATSJCAA applied to McLeod, all five members of the court agreed that McLeod had not attained tenure under the FDA.
McLeod appealed to the Alabama Supreme Court, which held that this court's determination that the FDA applied to McLeod had become the law of the case because the college did not challenge that determination by cross-petition. The supreme court, however, reversed this court's holding that McLeod had not obtained tenure under the FDA. The supreme court remanded the case for this court "to consider the issues it has not yet addressed but that need to be addressed because of [the reversal by the supreme court]." 841 So.2d at 266.
The following issues are not open to reexamination on remand from the Alabama Supreme Court; they were decided adversely to the college on a prior appeal or were not challenged in the supreme court by a cross-petition for a writ of certiorari. They are, therefore, the law of the case: (1) that McLeod's claims against Dr. Young and the college are not barred by the sovereign immunity granted to the State by § 14 of the Alabama Constitution of 1901, see McLeod I, 718 So.2d at 684; (2) that the FDA applies to McLeod, see McLeod II, 841 So.2d at 248; (3) that the contract McLeod signed for the 9 academic quarters in which he taught 15 credit hours, which includes provisions designating his employment as "part-time" and "nontenured" and states that his employment "did not count toward tenure," does not override the FDA, see Ex parte McLeod, 841 So.2d at 264 n. 1 (reversing McLeod II); and (4) that McLeod's out-of-class activities in preparation for teaching his classes count toward the 20 or more hours per week of "required duties" that are necessary for McLeod to be deemed "full-time" and thereby eligible for tenure under the FDA, see McLeod II, 841 So.2d at 257.
The following issues must be determined on this remand: (1) whether the circuit *271 court's finding that "McLeod's duties required 20 or more hours in each normal working week of the school term" is supported by the record; and (2) whether the circuit court's conclusion that "Mr. McLeod worked and was employed for sufficient time to attain tenure" is correct.
Section 36-26-102, Ala.Code 1975, a part of the FDA, states that after an employee has completed his or her probationary period, the employee shall be deemed employed on a nonprobationary status and shall not be terminated except for certain enumerated reasons. Section 36-26-101 states that the probationary period for "employees as defined in Section 36-26-100" is "a period not to exceed three years from the date of his or her initial employment." Section 36-26-100, defining "employees," states, in pertinent part:
"The term `employees' as used in this article, is deemed to mean and include all persons employed by ... two-year educational institutions .... Only full-time employees ... are intended to be covered by this article. Full-time employees include ... employees whose duties require 20 or more hours in each normal working week of the school term...."
On remand after the supreme court's reversal of our judgment in McLeod I, the circuit court held a hearing on McLeod's factual claims. McLeod testified that for the 9 academic quarters during which he was employed to teach 15 credit hours, he taught three 5-hour basic speech classes. McLeod acknowledged that, because the class periods at the college are 50 minutes long rather than a full hour, a 15-credit-hour schedule required him to be in class only 12 ½ hours per week. He testified, however, that the 15-credit-hour schedule required him to expend 20 or more hours each week, including out-of-class preparation. McLeod said that, in addition to classroom time, he also spent time each week on the following activities: devising a syllabus; reviewing the textbook; preparing handouts; planning his lectures; preparing, grading, and administering tests and make-up tests; maintaining class rolls and records; and conferring with students.
Dr. Ralph Purvis, the chairman of the fine arts department at the college and McLeod's supervisor, testified that, in his opinion, it would be impossible for any instructor to teach a 15-credit-hour schedule and spend less than 20 hours per week on his required duties. Purvis agreed with McLeod's assessment of the out-of-class activities required for McLeod's position and gave the following estimates of the time Purvis thought would be required to perform some of those duties:

 Time expended per
Activity week on activity
Devising a syllabus 1 hour
Planning lectures 1 hour
Preparing, grading, and administering
 tests and make-up tests 7 hours
Maintaining class rolls and records 1 hour
Conferring with students 1 hour

Purvis characterized his estimates as "conservative." When he was asked whether McLeod "work[ed] 35 hours a week," Purvis replied:
"A. Probably, maybe 30, I don't know.
"Q. [By counsel for McLeod] Close to it?
"A. Probably.
*272 "Q. Well, he would average 35 hours a week or more?
"A. I would say maybe 30 to 35."
We have carefully read the testimony presented at the hearing, and we conclude that the trial court's findings of fact are supported by the record.
"As we have countless times stated, where, as here, the trial court's findings are based upon evidence heard ore tenus, those findings are favored with a presumption of correctness and will not be disturbed on appeal if supported by evidence or any reasonable inference therefrom, unless plainly and palpably erroneous or manifestly unjust."
Davis v. Owen, 461 So.2d 1300, 1302 (Ala. 1984). See also Barnes v. Patrick Henry State Junior College, 515 So.2d 1257, 1258 (Ala.Civ.App.1987).
In Dennis v. Dobbs, 474 So.2d 77 (Ala. 1985), our supreme court held that there was sufficient evidence to support the trial court's finding that a student health nurse at Gadsden State Junior College was a "full-time" employee based on the following testimony by the nurse:
"[The nurse] testified she worked seven hours in her office on days that school was in session, with no break for lunch. The office hours for the school nurse are listed in the school catalog as 8:00 a.m. to 3:00 p.m., or seven hours. [The nurse's] job description states that in addition to these office hours, she will be `on call in case of emergencies.' [The nurse] testified she was often called back nights, weekends, and days between quarters by `dorm mothers' and students. She further testified that she often stayed later than 3:00 p.m. to take care of sick or injured students and drive them to the doctor, if needed. [Her] job description also called for her to perform `other related duties assigned.' [The nurse] testified she performed such diverse tasks as coordinating health fairs, making trips as the cheerleader sponsor, and running the hospitality room at the State Women's Basketball Tournament. All of these activities were done after her posted office hours. [The nurse] only drew seventy percent of the salary for a full-time employee, however. [The nurse] testified she considered herself a full-time employee in every respect except the way her salary was calculated. [The president of the junior college] testified that [the nurse] received the same fringe benefits as a full-time employee, including sick leave, professional leave, personal leave, annual leave, insurance, and holidays. [The president's] letter to [the nurse], in which he states the letter is written pursuant to Policy 614.011, also could lead to an inference that Gadsden State considered [the nurse] a full-time employee.
"Based on the evidence above, we cannot say that the trial court was plainly and palpably erroneous in finding that [the nurse] was a full-time employee...."
474 So.2d at 79-80. We conclude that the trial court's finding that "McLeod's duties required 20 or more hours in each normal working week" is supported by the record. Section 36-26-100 also states, however, that the required duties of a full-time employee must be performed "each normal working week of the school term." (Emphasis added.) After remand from the supreme court, this court requested the parties to brief the following questions: (1) What is the meaning of "school term" as used in § 36-26-100? (2) For how many "school terms" has McLeod been employed full-time? (3) Does that number of "school terms" amount to three years within the meaning of § 36-26-101?
*273 The parties agree that a "school term" at the college was, at the times relevant to this appeal, an academic quarter;[2] that McLeod was employed for more than 9 quarters, during which he taught 15 or more credit hours; and that 9 quarters qualifies as "three years" within the meaning of § 36-26-101 and Ex parte Clayton, 552 So.2d 152, 154-55 (Ala.1989) (holding that, for purposes of the FDA, an employee's three-year time of service need not be continuous or consecutive).
The college correctly points out that the employees in Clayton were nonteachers.[3] It asserts that the holding in Clayton is, therefore, limited to nonteachers and that this court is, for the first time, squarely presented with the issue of whether the three-year probationary period in § 36-26-101 must, for teachers, be continuous or consecutive. If the three-year period must be continuous or consecutive, then McLeod has not attained tenure because he has only seven continuous or consecutive quarters of full-time employment. If, however, the three-year period need not be continuous or consecutive, then McLeod's nine quarters of full-time employment qualify him for tenure. We conclude that the three-year probationary period need not, even for teachers, be continuous or consecutive. We reach that conclusion based on two grounds: (1) the principles of statutory construction outlined in Clayton itself and (2) the special concurrence of Justice Almon, joined by Justice Maddox, in McLeod I, 718 So.2d at 688-90.
In Clayton, the Alabama Supreme Court held that the Court of Civil Appeals had "read into" § 36-26-101 a requirement of consecutiveness that the Legislature had not intended.
"If the legislature had intended that the requisite term of probationary employment be consecutive or continuous, it would have so stated. There is no language within the text of the Fair Dismissal Act to support the construction requiring three consecutive years of probationary service from the date of the employee's initial employment."
552 So.2d at 154-55.
Justice Almon, concurring specially in an opinion joined by Justice Maddox on the appeal of our decision in McLeod I, stated that he did not believe that § 36-26-101 or any other part of the FDA governed the achievement of tenure for junior college instructors. Instead, he thought, tenure for instructors was determined by regulations promulgated pursuant to § 16-60-111.4(5), Ala.Code 1975, a part of the ATSJCAA. Those regulations, he said, were found in § 3.A of the Revised Hearing Procedure. The pertinent regulation stated:
"All employees as defined in subsection 1.B of these regulations shall be deemed employed on a probationary status for a period of three years from the date of his or her initial employment."
718 So.2d at 689. Justice Almon pointed out that "§ 3.A of the Revised Hearing Procedure ... track[ed] the language of § 36-26-101(a)" and its three-year-probationary-term provision should be construed in the same way as the Alabama Supreme Court had construed the virtually identical three-year-probationary-term provision of § 36-16-101. 718 So.2d at 689 (Almon, J., *274 concurring specially). Justice Almon explained:
"The only difference in the language of these two provisions is that § 36-26-101(a) refers to `a period not to exceed three years,' whereas § 3.A refers to `a period of three years' from the date of initial employment. If anything, therefore, § 3.A contains less indication that consecutive years or continuous employment was intended."
718 So.2d at 689 (Almon, J., concurring specially).
The trial court's judgment that "Mr. McLeod worked and was employed for sufficient time to attain tenure" is due to be affirmed. The circuit court did not state in its findings or conclusions whether McLeod was to be tenured at 20 hours per week or at 35 hours per week, but we conclude that the record supports a determination only as to the lower figure. McLeod did not testify that he worked 35 hours per week, and Purvis, his supporting witness, testified somewhat equivocally, concluding that McLeod's total was "maybe 30 to 35" hours per week.
OPINION OF APRIL 12, 2002, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
MURDOCK, Judge, concurring in the result.
I concur in the result reached by the main opinion simply because, in my view, Ex parte Clayton, 552 So.2d 152 (Ala. 1989), directly controls the outcome of this case. Neither Clayton nor the Fair Dismissal Act draws any distinction in the operation of that Act as between teachers and nonteachers. Section 36-26-101 describes only one probationary period for employees subject to the Fair Dismissal Act. Ex parte Clayton holds that that periodthree yearsneed not be continuous or consecutive. 552 So.2d at 154-55.
As the majority notes, the Fair Dismissal Act is applicable to the employee in this case, McLeod, because that is the law of this case. The issue of whether McLeod, as a teacher at a junior college, would be governed by the Fair Dismissal Act, and therefore by the Supreme Court's holding in Clayton, if the applicability of the Fair Dismissal Act to McLeod was not the law of this case, is an issue not presented to this court at this time.
NOTES
[1] By the time of the decision in McLeod II, college had a new president, Dr. Linda Young, who was substituted for former President Beaty as a party in this case.
[2] The college is now on the semester system.
[3] In McLeod I, this court stated:

"Clayton was a consolidated appeal of two cases: Clayton v. Board of School Commissioners of Mobile County and Day v. Southwest State Technical College. The plaintiffs in Day were instructors .... [O]nly the Clayton plaintiffs, who were not teachers, petitioned for certiorari review."
718 So.2d at 677 (footnote omitted).