MURDOCK, Judge.
Dianne Thornton was dismissed from employment by the Elmore County Board of Education. She filed a four-count complaint in the Elmore Circuit Court claiming, among other things, that her dismissal had been improper under the Fair Dismissal Act, §§ 36-26-100 through -108, Ala.Code 1975 (hereinafter referred to as “the Fair Dismissal Act” or “the Act”). The Board filed a motion for a summary judgment on all of Thornton’s claims, and Thornton filed a motion for a summary judgment on, among other things, her claim alleging improper dismissal under *659 the Act. The trial court granted Thornton’s summary-judgment motion as to her claim alleging improper dismissal under the Act and denied the Board’s summary-judgment motion as to that claim; its one-sentence judgment in favor of Thornton did not include findings of fact or conclusions of law.[1] The Board appeals.
Thornton was employed by the Board as a full-time bus driver for the 1995-1996 school year, beginning September 28,1995. She was rehired for the 1996-1997, 1997-1998, and 1998-1999 school years. She was terminated without a hearing on September 21, 1998, effective October 14, 1998.[2] Thornton also had been employed by the Board as a full-time bus driver for approximately two months during 1976.
The Board makes all hiring and firing decisions with respect to all employees in the Elmore County school system. When Thornton was hired by the Board for the 1995-1996 school year, she and the Board entered into an employment contract for the 1995-96 school year. The contract was entitled: “Elmore County Board of Education — Specific Letter of Appointment— Non-Tenured Support Personnel,” and stated, in pertinent part:
“School Year: 1995-96
“Beginning Date: September 28,1995
‘Tears of Experience: none
“Annual/Monthly Salary: 7857.77/668.88
[[Image here]]
‘Tour employment is considered probationary and temporary until such time as you earn permanent status in compliance with state law. Your employment shall not constitute a contract beyond this one school year.
[[Image here]]
“I understand that the information that I have provided the Elmore County Board of Education is in the nature of a representation, and if incorrect on a material fact, will constitute sufficient cause for cancellation of this contract.... I hereby accept this position offered to me in the Elmore County school system for the 1995-96 school year with the understanding that I adhere to all board policies and procedures.”
Near the end of the term of school in each of the 1995-1996, 1996-1997, and 1997-1998 school years, the superintendent sent Thornton a memorandum requesting information concerning whether Thornton intended to work in the Elmore County school system during the following year. Each memorandum was addressed to “[a]ll Bookkeepers, Bus Drivers, Custodians, Maintenance, Secretaries, and Teacher Aides in the Elmore County schools.”[3] Although the record contains copies of only two memoranda regarding “Plans for 1996-97” and “Plans for 1997-98,” the Board submitted, in support of its summary-judgment motion, an affidavit of the associate superintendent indicating that Thornton had also received, signed, and returned a similarly worded memorandum at the conclusion of the 1997-1998 school year indicating her desire to continue working as an employee of the school system during the 1998-1999 school year. *660 The two memoranda included in the record are identical except for the dates and the school years referenced. The memorandum regarding “Plans for 1997-98” states:
“Each year at this time we request information from each employee relative to his/her working in Elmore County the next year.
“Please indicate below whether or not you plan to work in the Elmore County School System during the 1997-98 school year. A negative reply will be considered equivalent to a resignation at the end of this scholastic year, 1996-97. “Please check one of the following and return this form to your principal so that it may be returned to the county office by April 15, 1997.
“() I plan to continue working in the Elmore County School System next year, 1997-98.
“() I do not plan to work in the Elmore County School System next year, 1997-98.
“() I plan to retire at the end of the 1996-97 school year.”
It is undisputed that, during the summer months, Thornton continued to receive a paycheck and to accrue annual leave and sick leave; continued to have mandatory contributions to the Teachers’ Retirement System of Alabama (“TRS”), § 16-25-1 et seq., Ala.Code 1975, deducted from each paycheck; and remained covered under the Public Education Employees’ Health Insurance Plan (“PEEHIP”), § 16-25A-1 et seq., Ala.Code 1975.
The Board’s payroll coordinator explained in a deposition that the salaries of all school employees who work during the nine-month term of school are paid over a period of 12 months so that those employees will continue to receive a paycheck during the summer months when school is not in session. She explained that all nine-month employees receive their final paycheck for the previous nine months of work at the end of August of each year.
The Board submitted an affidavit of the director of benefits for the TRS, explaining that creditable service for purposes of an employee’s retirement-account statement includes all months in which contributions are deducted from a paycheck. The Board also submitted an affidavit of the director of insurance for PEEHIP, explaining how benefits are allocated under that plan so that employees who are not employed during the summer months remain covered under that plan during the summer.
The Board contends on appeal that Thornton was a probationary-status employee under § 36-26-101(a), Ala.Code 1975, and that she therefore was not entitled to a pretermination hearing under § 36-26-103, Ala.Code 1975. The Board contends that Thornton was not employed during the summer months, and that she had therefore not obtained nonprobation-ary, or “tenured,” status at the time she was terminated. Specifically, the Board contends that Thornton had been employed for a total of 29 months at the time of her termination,[4] 7 months less than the 3 years required to become tenured under § 36-26-101(a) and -102.
Thornton contends that she was improperly dismissed without a pretermination hearing because, she says, she had been employed for more than three years at the time of her termination and thus had ob *661 tained tenured status at the time she was terminated. With respect to her employment from 1995 through 1998, Thornton contends that, for purposes of § 36-26-101(a), she was employed by the Board one week less than “three years,” i.e., that she was continuously employed from September 28, 1995, until she was terminated on September 21,1998, including the summer months. She contends that that amount of time, plus her two months in 1976, exceeds the three-year threshold for tenured status.[5] We agree that Thornton has attained tenured status, and therefore affirm the trial court.
The nature of Thornton’s job as a bus driver was such that, like a teacher, the period during which her duties had to be performed corresponded to the nine-month period during which school was in session. Thornton argues that because she never submitted a negative response to the memorandum she received each spring from the superintendent, she was not considered to have resigned at the end of a scholastic year and that she therefore remained employed year-round. Thornton points to the following facts as additional support for her position: she continued to receive a paycheck and to earn annual leave and sick leave during the summer months; she and her family continued to remain covered under PEEHIP; and her TRS account statement dated June 30, 1999, reflected three years and three months of creditable service.
There is no dispute that Thornton is an employee covered under the Fair Dismissal Act.[6] The “probationary period” for employees covered under the Act is set forth in § 36-26-101, Ala.Code 1975, which provides, in pertinent part:
“(a) All employees as defined in Section 36-26-100 shall be deemed employed on a probationary status for a period not to exceed three years from the date of his or her initial employment, or a lesser period which may be fixed by the employing authority.
[[Image here]]
“(c) At any time during the employee’s probationary period, the employing authority may remove an employee by furnishing said employee written notification at least 15 days prior to the effective day of termination.”
*662 (Emphasis added.) Upon the completion by an employee of his or her three-year probationary period, “said employee shall be deemed employed on a nonprobationary status.” Ala.Code 1975, § 36-26-102. Employees on nonprobationary status may not be terminated without, among other things, an opportunity for a hearing. See Ala.Code.1975, § 36-26-103 through -106.
We note that just as § 36-26-101(a) uses the measure of three “years” for an employee’s probationary period, the contracts at issue in the present case applied consecutively to the 1995-1996, 1996-1997, and 1997-1998 “school years.” We conclude that by the use of the word “years” in § 36-26-101(a), the Legislature intended, at least in the context of facts such as those presented in this case, that the duration of an employee’s employment should be measured without gaps for the summer months falling between the consecutive nine-month “school terms” in question.[7]
In Uwakolam v. Huntsville City Board of Education, 554 So.2d 1036 (Ala.Civ.App.1989), this court concluded that the term “years” under § 36-26-101(a) means “calendar years”. Id. at 1037. Relying on the definition of “year” under § 1-1-1(16), Ala. Code 1975 (defining the term “year,” in pertinent part, as “mean[ing] a calendar year”), we held that “the legislature intended the language ‘three years’ contained in § 36-26-101(a) to mean three calendar years.” 554 So.2d at 1037.
In Uwakolam, we stated that “[t]he employees dealt with under §§ 36-26-100, et seq., are nonteachers employed year round.” Id. at 1038. In that case, a non-teacher employee was hired from April 26, 1983, until January 10, 1984, a period of almost nine months if the inclusive summer months are counted, and from October 1, 1985, until July 2, 1987, a period of 21 months if the inclusive summer months are counted. Based on those employment periods, this court concluded that the “actual length of time employed” in that case was 30 months. Id.[8]
In Ex parte McLeod, 841 So.2d 260 (Ala. 2001), the Supreme Court reiterated the method of calculating the requisite service time to achieve tenured status, stating that “[u]nder the [Fair Dismissal Act], [an employee] must have three years of full-time employment to be entitled to tenure. See § 36-26-101, Ala.Code 1975.” 841 So.2d at 264. On remand from the Supreme Court, this court asked the parties to brief, among other things, the issues of “how many ‘school terms’ ha[d] [the plaintiff] been employed full-time” and “[d]oes that number of ‘school terms’ amount to three years within the meaning of § 36-26-101.” Young v. McLeod, 841 So.2d 268, 272 (Ala.Civ.App.2002). Based on the responses of the parties, this court summarily disposed of the latter issue by noting as follows:
“The parties agree that a ‘school term’ at the college was, at the times relevant *663 to this appeal, an academic quarter; that [the employee] was employed for more than 9 quarters, ...; and that 9 quarters qualifies as ‘three years’ within the meaning of § 36-26-101 and Ex parte Clayton, 552 So.2d 152, 154-55 (Ala.1989) (holding that, for purposes of the [Fair Dismissal Act], an employee’s three-year time of service need not be continuous or consecutive).”
Young v. McLeod, 841 So.2d at 273 (emphasis added; footnote omitted).
In Kirkland v. Davis, 682 So.2d 1366 (Ala.Civ.App.1996), this court, in the context of addressing Alabama’s Teacher Tenure Act, noted that there had been much confusion arising from the interpretations of the terms “school year,” “scholastic year,” and “school term” in the Teacher Tenure Act, Ala.Code 1975, § 16-24-1 et seq. For purposes of the Teacher Tenure Act, the Legislature has defined “scholastic year” as “begin[ning] with the first day of July and end[ing] with the thirtieth day of June each year.” Ala.Code 1975, § 16-1-1(4). This court held in Kirkland that, in the absence of a school-term designation by a board of education, the last day of the school term within the meaning of § 16-24-12, Ala.Code 1975, is the day when activities relating to attendance of the students and/or the teachers for that school year are concluded; in other words, the term of school ends when both students and teachers are dismissed from further duty for that year. Kirkland, 682 So.2d at 1367. In this regard, we note that the Fair Dismissal Act provides that it applies to full-time bus drivers and other employees whose duties require 20 or more hours of work “in each normal working week of the school term.” Ala.Code 1975, § 36-26-100 (emphasis added).
In Estill v. State Tenure Commission, 650 So.2d 890, 891 (Ala.Civ.App.1994), this court construed “succeeding year” under § 16-24-5 to mean “succeeding scholastic year.” A careful reading of Estill reveals that this court attributed the same meaning to the terms “school year” and “scholastic year,” but a different meaning to the term “school term.” In Estill, this court held:
“ ‘Generally, when a statute speaks of a year, twelve calendar ... months are intended.’ Black’s Law Dictionary 1615 (6th ed.1990). We must give words their natural and ordinary meaning in ascertaining legislative intent, and a court is bound to interpret language to mean exactly what it says. IMED Corp. v. Sys. Eng’g Assocs. Corp., 602 So.2d 344 (Ala.1992). We find that if the legislature had intended that a ‘succeeding year’ mean something less than twelve calendar months, i.e., ‘school term,’ then § 16-24-5 would have read ‘succeeding school term’ instead of ‘succeeding year.’ When the statutory language is clear and unambiguous, there is no room for judicial construction. Parker v. Hilliard, 567 So.2d 1343 (Ala.1990).”
650 So.2d at 892 (footnote omitted).
In Estill, this court concluded that because the term “school year” and the term “school term” are used in different parts of the Alabama Code under the Teacher Tenure Act, the legislature intended the terms to have different meanings.
The foregoing distinction between “school year” and “school term” is consistent with an earlier opinion of our Supreme Court, Marshall County Board of Education v. State, 252 Ala. 547, 42 So.2d 24 (1949), wherein the Supreme Court held that “school year” under § 298, tit. 52, Ala.Code 1940 (now § 16-28-4, Ala.Code 1975), meant “scholastic year” as defined under § 1, tit. 52, Ala.Code 1940 (now § 16-1-1). In Marshall County, the Supreme Court stated:
“It is a matter of common knowledge that public elementary schools are not *664 open for instruction during the entire twelve-months period. They usually open in August, September, or October, and generally instruct for a period of nine months thereafter. But the dates on which schools open and close do not determine a ‘school year.’ As before indicated, a ‘school year’ and a ‘scholastic year’ are the same. Such we think is the clear legislative intent.”
252 Ala. at 550, 42 So.2d at 26.
In light of the foregoing authorities, we conclude that the “school years” for which Thornton was employed were, for purposes of the measurement of “years” in § 36-26-101(a), not limited to the nine-month “school terms” falling within those years, but necessarily included the summer months falling between those nine-month school terms. Accordingly, we conclude that Thornton was employed for three or more school years and therefore should not have been treated as a probationary employee under § 36-26-101(a). The judgment of the trial court is due to be affirmed.
AFFIRMED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ„ concur.

. All other claims by Thornton were disposed of in favor of the Board, either at a pretrial conference or by the entry of a partial summary judgment in the Board's favor.

. The Board claims to have voted to terminate Thornton at its September 21, 1998, meeting. Thornton notes that the Board's minutes of that meeting contain no reference to such a vote. However, Thornton requested to appear, and in fact appeared, before the Board at its October 26, 1998, meeting in an effort to change the Board's determination; the Board did not alter its decision to terminate Thornton.

.The memorandum makes no reference to the probationary or nonprobationary status of the employees to whom it is addressed.

. The Board calculates 29 months as follows: September 28, 1995 through May 1996 (eight months), plus August 1996 through May 1997 (nine months), plus August 1997 through May 1998 (nine months), plus August 1998 until September 21, 1998 (one month), plus August 1976 through October 1976 (two months). The Board concedes that, for purposes of obtaining tenured status, Thornton can count the two months in 1976 during which she was employed as a bus driver. See note 6, infra.

. As noted previously, the effective date of Thornton's termination was October 14, 1998. Nonetheless, in their briefs to this court, the parties treat September 21, 1998, as the termination date for purposes of calculating the duration of Thornton’s employment. In light of Thornton’s two months of employment by the Board in 1976, the outcome of this case does not depend upon whether Thornton’s employment included the period from September 21, 1998, to October 14, 1998. See Ex parte Clayton, 552 So.2d 152, 154-55 (Ala.1989) (holding that, for purposes of attaining nonprobationary status under § 36-26-101 and -102, the period(s) of an employee’s three-year time of service need not be continuous or consecutive).

. For purposes of the Fair Dismissal Act, the term "employees" is defined at § 36-26-100, Ala.Code 1975, which provides, in pertinent part:
"The term ‘employees,’ as used in this article, is deemed to mean and include all persons employed by county and city boards of education, ... who are so employed as bus drivers, lunchroom or cafeteria workers, maids and janitors, custodians, maintenance personnel, secretaries and clerical assistants supervisors.... Only full-time employees who are not otherwise covered by the state Merit System, [or] the teacher tenure law ... are intended to be covered by this article. Full-time employees include (a) adult bus drivers and (b) other employees whose duties require 20 or more hours in each normal working week of the school term, employing board holidays excepted. Substitute teachers and substitute employees are excluded from the article.”

. As previously noted, the Alabama Supreme Court in Ex parte Clayton, 552 So.2d 152 (Ala.1989), held that, for purposes of attaining nonprobationary status under § 36-26-101 and -102, the period of an employee’s three-year time of service need not be continuous or consecutive. See note 5, supra. Clayton, however, did not address the proper method of calculating an employee's time of service when that service is continuous and consecutive. Nor did Clayton address the specific issue of whether summer months falling within consecutive “school years” in which an employee is employed should be counted in determining the employee's time of service.

. Because of this and the fact that the parties had in fact stipulated that the employee had been employed less than three years, the employee properly remained classified as a probationary employee. Uwakolam, 554 So.2d at 1038.